## GILLESPIE vs. THOMAS.

Where premises are held by a *tenant* for a *term of years* in the city of New-York, and a portion thereof is taken in the *opening* or *widening of a street*, the tenant is entitled to an *abatement of the rent* reserved in the lease, although by the improvement the part left is rendered more valuable than the whole premises were previous thereto.

The *apportionment of rent* in such case is between the part taken and the residue of the demised premises, *according to the value* of the several parts ; and the abatement takes place from the *time of the confirmation of the report* of the commissioners of estimate and assessment.

The *apportionment of rent* is a *damage* to the *landlord*, and should accordingly be allowed by the commissioners of estimate and assessment; so on the other hand, the *abatement* of the rent should be deducted from the *damage* of the *tenant*.

A plea is bad which, in its commencement, purports to be an answer to the *whole*, but is in truth an answer to only *part* of a declaration.

ERROR from the superior court of common pleas of the city of New-York. *Ann Thomas* brought an action of covenant as the grantee of the reversion of certain demised premises in the city of New-York, against *Dennis Gillespie* as tenant thereof by assignment. The rent reserved in the lease was $1000, payable quarterly. The plaintiff brought her suit in May, 1832, claiming $500, a *half year's rent*, to be due and in arrear. The defendant pleaded, 1. *Non est factum ;* 2. *Actio non,* because, on 21st April, 1831,proceedings were instituted by the corporation of the city of New-York for the widening of *William street,* in that city, and that in the operation a portion of the demised premises was taken, specifying the number of feet ; that the report of the commissioners of estimate and assessment was *confirmed* by this court on the 17th November, 1831, whereby the corporation became *seized* of the portion taken, and the demise and the covenants in the lease, *as to such portion,* ceased and determined, leaving the *residue of the demised premises* subject to a just and equitable apportionment of the rent originally reserved. . The defendant then avers that upon such apportionment, the rent chargeable upon the *residue* of the premises ought not to exceed $760 *per annum,* or $190 *quarterly ;* that the first quarter's rent, after the

confirmation of the report, fell due on the *first day of February*, 1832, on which day he *tendered* $190 to the plaintiff in payment and satisfaction of the rent, which she refused to accept; that he hath always since been ready to pay the $190, and brings the same into court, concluding with a verification and prayer of judgment, "whether the plaintiff ought to have or maintain her action, or *ought to recover any more or greater damages than $190, on account of the said first quarter of the said six months rent declared for, on occasion of the said supposed breach of covenant in this behalf assigned*," &c. And 3. He put in a plea similar to the last, as to the *quarter's rent* due on the *first day of May*, 1832, averring such quarter to be the residue of the six months rent declared for. To these two pleas, the plaintiff put in *general demurrers*, and the superior court, after argument, held the pleas to be bad, and gave judgment accordingly for the plaintiff. The defendant, however, had subjoined to the plea of *non est factum*, a notice of facts intended to be proved on the trial, embracing substantially the *same matters* set forth in the special pleas, and the cause proceeded to trial on the *issues of fact*. On the trial of the issues of fact, the plaintiff read in evidence the lease declared on, bearing date 20th March, 1823, for the term of *fourteen years*, securing an annual rent of $1000, payable quarterly, on the first days of August, November, February and May, in each year. The lease contained a covenant, that if any part of the demised premises should be taken during the term for the *widening* of *William street*, the tenant or his assigns, on paying the arrearages of rent, might *surrender the lease* and the remainder of the term. The defendant then produced the proceedings had on the widening of the street. The area of the whole of the demised premises contained 3378 square feet, and of the portion taken for the widening of the street was 833 square feet. The plaintiff, as landlady of the premises, was allowed by the commissioners for loss or damage sustained by her $1836, and the defendant was allowed $5000 for loss or damage sustained by him. The defendant proved that a *rateable abatement of the rent* reserved in the lease, in the proportion of the area taken to the whole

area of the demised premises, would be $246,29, (*reducing the annual rent below the sum of $760, as averred in the plea.*) Previous to the widening of the street, *the whole* of the demised premises was covered with a building, which was pulled down, and after the widening of the street a new building erected, which also covered the whole of what was left of the lot. The *tender* of $190 rent to the plaintiff on the first day of *February*, 1832, was shown, and also a like tender on the first day of *May*, 1832. The plaintiff then *offered to prove* that the value of the lease and the rental of the premises had been greatly benefitted by the widening of William street; which evidence was objected to on the part of the defendant as inadmissible, but the objection was overruled and the defendant excepted. It was then proved that the *residue* of the demised premises, after the widening of the street, was worth *fifty per cent.* more than it was worth before the widening. The plaintiff also proved a resolution of the common council of the city passed in January, 1832, postponing the widening of the street until the first day of May, 1832. During the trial, two of the commissioners of estimate and assessment testified as to the principles upon which estimates and assessments were made in the opening or widening of streets, stating substantially that they were made in conformity to the directions of the statute on that subject. The evidence being closed, Mr. Justice Oakley charged the jury, that in apportioning the rent to be paid by a tenant, where a part of the demised premises was taken for the widening of a street, it was not correct to adopt as a rule, that the abatement of rent should be rateable, according to the area which the premises left bore to the whole area of the premises demised, but that all the circumstances relating to the property and improvement should be taken into consideration ; that the question for their consideration was, what rent the defendant ought justly and equitably to pay for the residue of the premises; and if they should be of opinion that the premises left, after the widening of the street, were of *equal* or *greater annual value* than the rent reserved in the lease, they had a right to give a verdict for the plaintiff for *the whole rent reserved*, with interest thereon ; otherwise they ought to make such deduction from the

rent reserved as they should consider equitable. The jury found for the plaintiff for the $500 demanded, and interest. The defendant excepted to the charge, and, after judgment, sued out a writ of error.

*W. Mulock & I. L. Wendell,* for plaintiff in error.

*D. Lord, jun.,* for defendant in error.

*By the Court,* NELSON, J. The special pleas are bad. The declaration contains but a single count, alleging as a breach of the covenant, the non-payment of *one half year's rent,* due on the first day of May, 1832. The first special plea, in its commencement, professes to answer the whole cause of action, and then sets up in the body of it matters going only in bar of a recovery of *one quarter's rent,* ending the first day of February, 1832. Assuming the matter to be a good defence to that extent, it is no defence to the whole cause of action. The plea therefore is bad for this cause, and also for concluding with a prayer of judgment against maintaining the action for the said quarter's rent. The second special plea is subject to the like objection. It also begins by professing to answer the entire cause of action, and then sets up matter and concludes in bar of the right to recover for the quarter ending first of May—a portion only of the plaintiff's demand. Both pleas, taken together, were intended by the pleader to be a bar to the breach in the declaration, and yet each singly professes in its commencement to constitute such bar. It is well settled, where a plea begins as an answer to the whole declaration, and answers only a part, that it is bad. 6 *Johns. R.* 63. 18 *id.* 28. 19 *id.* 349. 4 *Cowen,* 424. 1 *Chitty,* 509, 510. It is not material to consider the principle upon which the pleas are founded, assuming the matters to have been well pleaded, as that question necessarily arises upon the bill of exceptions. For this reason I presume no amendment was asked for in the court below. The judgment was therefore absolute and correct.

As to the bill of exceptions : The corporation of the city of New-York have power to open any street or public place,

and also to extend, enlarge, straighten or alter one already opened, and to enter upon and take the lands and tenements required for such purposes; but compensation and recompense must be made to any party to whom the loss and damage thereby sustained shall be deemed to exceed the benefit and advantage thereof—the excess of damage over the benefit to be ascertained in the manner prescribed by statute, 2 *R. L.* 408, § 177. By the 178th section of the same act it is provided, that in the improvement of any street, it shall be the duty of commissioners to be appointed by the supreme court, " to proceed to and make a just and equitable estimate and assessment of the loss and damage, if any, over and above the benefit and advantage, or of the benefit and advantage, if any, over and above the loss and damage, as the case may be, to the respective *owners, lessees,* &c. entitled unto or interested in the lands and tenements" required for the improvement and adjoining the same ; and in making the estimate, assessment and report, it is their duty, in all cases where the damage to the *owners and lessees* exceeds the benefit, to estimate and report the excess only of the damage over the benefit, for compensation ; and in all cases where the benefit to the *owners* or *lessees* will in the opinion of the commissioners be equal to the damage, to report that they will suffer no damage ; but where the benefit exceeds the damage, to report the excess of the benefit only. The report thus to be made is to be submitted to this court for confirmation. The 181st section provides, that in all cases where the *whole of any lot under lease* shall be taken for the opening or widening of a street, the covenants and engagements between landlord and tenant touching the same, upon the confirmation of the report of the commissioners of estimate and assessment in the premises, cease and are absolutely discharged ; and in all cases where *part only of a lot so under lease* is taken for such purposes, all contracts and engagements respecting the same, *upon the confirmation of such report,* determine and are absolutely discharged *as to the part thereof so taken,* but remain valid and obligatory as to the residue thereof; and the *rents* reserved or payable and to be paid for and in respect to the same are directed to be *so apportioned* as that the *part thereof justly and equitably*

*payable*, or that ought to be paid for such residue thereof, and no more, shall be demanded, or paid, or recoverable for or in respect of the same.   These several provisions have a material bearing upon each other, and must be kept in view in deciding the question presented upon the bill of exceptions.

The court below decided that the 181st section, providing for a just and equitable apportionment of the rent between the landlord and tenant, did not mean a rate according as the area left bore to the whole premises demised, but that, in making the apportionment, all the circumstances connected with the improvement should be taken into consideration, and that the question for the jury was, what rent the tenant ought justly and equitably to pay the landlord for the residue of such premises ; and if they believed, under all the circumstances and evidence in the case, that the premises, after widening the street, were of equal or greater annual value than the rent reserved in the lease, they should give a verdict to the plaintiff for the whole rent, with interest from the time it fell due ; otherwise they ought to make such deduction as under the circumstances they should consider equitable.

We concur with the court below in the opinion that the apportionment should be made regarding the *value* of the premises, and not the *area* of the part taken in reference to the area of the whole premises demised.   The tenant should be discharged from the rent, if at all, in a ratio to the value of the part taken for the improvement of the street.   This is according to the principle of apportionment of rent at common law.  *Viner's Abr. tit. Apportionment, B.* 2 *Inst.* 503, 4.  *Bacon's Abr. title rent, L. N.   Cro. Eliz.* 622, 771.   3 *Kent's Comm.* 469, 470.  10 *Co.* 128, *a.*   The principle was conceded on the argument upon both sides.   Assuming this to be the true rule of apportionment, the material question presented is, whether the construction given to the statute by the court below be the correct one.

Under the exposition of the statute by that court, the tenant may continue liable to pay the *whole rent* after he has been dispossessed of a *part* of the demised premises.   In this case 833 square feet were taken from 3378, the area of the whole, and no abatement of the rent made.   The common law would

have reduced it in the ratio that the value of the part thus taken bore to the whole. The, statute, it was supposed, intended to give a different rule, and the case as put to the jury turned not upon this ratio, but upon a question of fact, to wit, whether the annual value of the residue of the premises was equal to the whole rent reserved in the lease. This abstract proposition, which was submitted to the jury at the close of the charge, would seem to involve manifest injustice ; because its solution depended as well upon the fact of the tenant's having obtained a favorable lease in the first instance, as upon the rise in value after the improvement. The court however, I presume, intended to be understood, that the value of the part remaining over and above a rateable apportionment which should influence the jury, and authorize them to find the entire rent reserved, should arise exclusively from the improvement of widening the street. It is at least clear, that the landlord is not entitled to the benefit of any annual value of the residue over and above the rateable apportionment, arising from the fact that the premises were originally rented below what they were worth, or any improved value before the widening of the street. To permit this would be enabling him to break up his contract, and thereby get rid of a bad bargain ; in other words, to obtain profits that had been fairly acquired by his tenant by virtue of his lease. Before any improvement, half the premises might have been worth the annual rent.

We are next brought to the question, whether the landlord is entitled to any benefit to the lot arising from the improvement of the street during the tenant's term ? If he is, it must be by virtue of the statute. At common law it would belong to the tenant, as he would be discharged from the rent in a ratio to the value of that taken by the corporation of the city for the improvement. The language of the statute seems rather to indicate the application of the common law rule. It is as follows : " The *rent* shall be so apportioned as that the *part* thereof, (part of the rent) justly and equitably payable, or that ought to to be paid, for such said residue thereof, and no more, shall be demanded, or paid or recoverable for or in respect of the same." The *part* only of the rent justly and equitably chargeable upon the remainder of the demised premises, is en-

joined upon the tenant; and which seems to imply that the annual value of that portion of the premises of which he is deprived shall be abated. I do not, however, rely so much upon the mere language of the section, as upon the tenor and general scope of the statute. It has already appeared, by reference to the 178th §, that the commissioners, in making their estimate and assessment of damage or benefit, are to take into consideration the benefit and advantage of the *tenant* as well as *owner*, over the loss or damage, and *vice versa*. This is the clear language of the act, as well as the actual practice under it. The benefit then to the tenant must be set off or balanced against the damage. If it equals the damage, then nothing is allowed him for the part of the demised premises taken; if it exceeds it, then to the amount of the excess he must contribute to the expense of the general improvement; if it falls short, for that amount he is entitled to compensation. There is therefore no difference in this respect to be found in the statute between the *owner* and *tenant*. The tenant is considered *owner of the term*, and the landlord *of the reversion*; and the benefit and damage, in respect to each interest in the premises, are regarded by the commissioners in making their estimates. Now it seems to me apparent, if the benefit to the tenant resulting from the improvement of the street for his unexpired term, enters into the consideration of the commissioners, and constitutes a part of the fund out of which the improvement is made, as it certainly does upon the above view of the statute, it would be unjust and inequitable again to charge him for it, by way of enhancing the rent upon the *residue* of the premises. The benefit would be thus twice charged to him; once in contributing to the expense of widening the street, and again by an enhanced annual rent upon the part of the premises not taken, by reason of its improved value.

It was not material to have inquired on the trial, as was done in this case, upon what principles the commissioners acted in making the assessment, and whether they took into view the improved value of the tenant's term. They were bound to act in conformity to the regulations of the statute, and we are to presume they did so. If they did not, the

time to make objections and correct any departure from the statute, was on the motion for the confirmation of the report. The rateable apportionment of rent is a damage to the landlord ; and being such, the commissioners, by the very words of the act, are bound to take it into consideration., Thus he may be allowed for it.   So in respect to the tenant.   As his rent is to be abated rateably, the loss sustained by being deprived of a portion of the premises, is less than it would be if liable to the payment of the whole rent.   The damage is less the annual rent abated in the apportionment, and compensation therefor should be proportionably reduced.   I do not mean to say the commissioners always take this view of their duties ; all I mean is, that the statute requires it ; and so far as their acts become important in the consideration of the question in this case, we are to presume they have discharged their duties in accordance with the law.

The ground then upon which I place the decision of this case is, that the statute subjects the *tenant* equally with the *landlord*, in proportion to his interest in the premises, to the expense of the improvement of the street ; and this being so, no reason exists for exacting from him an increased rent for the *residue* of the premises by reason of any enhanced value of them.   If the value has risen by means of the improvement, he has paid an equivalent in his share of the expense.   The rent can be increased upon him, justly and equitably, only upon the idea that he has been at no expense in the improvement which has produced it.   Such an idea is in the teeth of the statute.   The benefit and advantage to the tenant must be charged to him by the commissioners, and the whole of it goes towards the improvement of the street one way or another, either to satisfy his own damage or that of others.,   In what does this benefit consist ?   Beyond all question, chiefly in the enhanced annual value of the demised premises, by means of the improvement, and which he enjoys during the residue of his term.   For this he can afford to contribute towards the improvement.   Indeed it is somewhat difficult to imagine any other advantage that can possibly accrue to the tenant, and that the commissioners could take into consideration.   If so, it would be the extreme of injustice to charge

him again for the benefit by an enhanced rent to the landlord upon the portion of the premises left. The statute then which provides that the rent " *shall be so apportioned as that the part thereof justly and equitably payable, or that ought to be paid for such residue* " of the premises, when taken in connection with the other provisions of the act, in my judgment clearly means nothing more nor less than a *common law apportionment.* In order to determine what would be a just and equitable part of the rent to be paid for such residue, it is necessary to ascertain and abate what would justly and equitably belong to the part taken in a rateable apportionment according to value.

The point of time in reference to which this apportionment should be made, in analogy to that at common law, must be at the time of the eviction, or in the words of the statute, when the corporation " shall become and be seized in fee" of the premises taken for the improvement, and that takes place upon the *final confirmation* of the report of the commissioners by this court. They may then take immediate possession and control the property, and if any further indulgence is given to the tenant, it becomes a question between him and the corporation. He afterwards continues in possession at sufferance, and in contemplation of the statute has no further rights in the property.

Upon the whole, believing the apportionment of the rent should have been made without regard to the benefit or damage to the landlord or tenant, by reason of the widening of the street, (that having been completely adjusted by the commissioners,) and that the common law rule should have governed the court and jury below, the error can be remedied only by a reversal of the judgment.

Judgment reversed.