After advisement an opinion was delivered by the Chancellor, no other member of the court delivering an opinion. In reference to the question above stated the following extract is made from that opinion:
“ The 181st section af the act of April. 1813, to reduce the several laws relating particularly to the city of New-York into one act, 2 R. L. of 1813, p. 417, provides that in all cases where only part of a lot under lease or contract shall be taken for the purpose of opening or widening a street, all contracts and engagements respecting the same shall, upon the confirmation of the report of the commissioners of estimate and assessment, cease, determine, and be absolutely discharged as to the part so taken, but shall remain valid and obligatory as to the residue of such lot; and the rents, considerations, and payments reserved or payable, and to be paid for or in respect to the same shall be so apportioned that the part thereof justly and equitably payable, or that ought to be paid for the residue of the premises, and no more, shall be demanded, or paid,' or recoverable, for or in respect of the same.
In the case of Gillespie v. Thomas, 15 Wendell, 464, the supreme court decided that the true construction of the 181st section was that the apportionment between landlord and tenant, and of course between bargainor and bargainee in any other contract, was a common law apportionment: that is, to apportion the rent, or other payment which was to be made on account of the premises, according to the relative value of the part taken and of the part left; and without reference to the benefit which the tenant, or other person, will receive by the enhanced value to him, of the part of the premises which has not been taken for the improvement. The statute perhaps is susceptible of a different construction, where the interests both of [ *646 ] the landlord *and tenant are increased in value by the improvement, even when the rent remains the same. But upon an examination of all the provisions of the statute relative to lands taken for improvements in the city of New-York, I concur in opinion with the supreme court that the legislature must have intended a common law apportionment.
Probably to carry out the intention of the legislature in reference to such apportionment of rent, or the payments which were to be made on account of the premises before the taking of any part thereof for the improvement, the commissioners of estimate and assessment should be directed to make such apportionment and report the same to the court, so that the future rights *646 of the parties may be settled by the court upon the confirmation of the report in conformity to such apportionment, without the expense of further litigation. Indeed the language of the last clause of the 181st section of the statute clearly indicates that the legislature must have contemplated an apportionment by the commissioners, and by the order of the court confirming their report, as the diminution of rent, or other payments, is to take place immediately upon the confirmation of the report. It would be very unreasonable to suppose that the legislature intended that after the report was confirmed, the rights of the parties should be left in such a situation that it would be impossible to- know what they were. The result of such a construction of the statute would be that the landlord could never distrain for his diminished rent, which had not been ascertained, without the danger of being subjected to a claim for damages for distraining for more than was due, and to an expensive litigation depending upon the conflicting opinions of witnesses, as to the relative value of the part of the premises taken for the improvement, and of the part uhieh was left, whose opinions might be greatly variant from those of the commissioners who had adjusted the claims of benefit and damage in reference to the equitable diminution of rent, &c. This state of uncertainty as to the amount of rent which he was legally liar ble to pay for the part of the premises which were left, would be equally dangerous to the tenant (although it would afford a rich harvest *for lawyers) as he could not safely pay or tender his rent until [ *647 ] the amount thereof had been fixed by an expensive litigation or a new agreement with his landlord. It is true these same difficulties may arise where there is an apportionment of rent by the common law. But in those cases the parties generally make the apportionment themselves, by contract, at the time of the severance ; so that the necessity of settling the future apportionment by actual litigation, seldom occurs. In these street causes, on the contrary, the severance is made without the consent of either of the parties whose future rights are to be affected. The assessments of damage and benefit to the respective parties are regulated by the opinions which the commissioners then form as to the diminution of rents, or of the other payments which are thereafter to be received, so that great injustice will frequently be done to one party or the other, if the rents or payments are to be afterwards apportioned, by a jury, upon new evidence as to the relative value of. the part of the premises taken for the improvement, and of that which is left. With great deference, therefore, to the opinion of the supreme court, although I agree that the apportionment contemplated by the legislature should be made upon the basis of a common law apportionment, I think that apportionment must be made by the commissioners of estimate and assessment in their report, and that if no diminuiton of rent or of the sums to be paid is stated in their report, or in the order of the court confirming the same, the legal presumption is, that the adjustment of dam *647 age and benefit to the tenant, and to the landlord or other person entitled to receive the future payments under the original contract, has been made by the commissioners upon the basis of the payment of the rent, &c. without diminution. In this ease, if the bill of exceptions taken in the suit of Thomas v. Gillespie, can be received as legal evidence of the facts stated therein, it was proved upon the trial of that cause, by Peter Stagg, one of the commissioners, that the allowance of $5000 damages to Gillespie, the tenant, was made upon that basis ; for they allowed him $4000 [ *648 ] for the full value of the buildings on the premises, as the *landlady was not bound to rebuild them by the terms of her lease, and $1000 for the rent of the premises during the time it would -take to erect new buildings thereon ; and no deduction was made from the $5000 on account of any benefit which the tenant was thereafter to receive on account of a supposed diminution of the rent which he was then liable to pay to his landlady. In addition to this, it appears by the testimony of Smith and Blake, that the lessee was greatly benefitted by the improvement, and he so stated to one of the witnesses. Were it proper, therefore, for us to go back beyond the new lease which the plaintiff in error voluntarily gave to his landlady subsequent to the first improvement of William-street, which lease in legal contemplation has reference to the lot as diminished by that improvement, he certainly had no equitable claim against her to correct any supposed error in fixing the rent in his present lease at $1000. The last decision, of the commissioners of estimate and assessment in the present case, in refusing to make any abatement on account of the part of the original lot which was taken for the first improvement of William-street, was therefore correct; and the justices of the supreme court were right in refusing to disturb the assessment on that ground.”