1841.

Wiggin
v.
Mayor &c. of
New-York.

---

### WIGGIN vs. THE MAYOR, &c. OF NEW-YORK.

Where the proceedings for the opening of a street in the city of New-York have been regular, and the report of the commissioners of estimate and assessment has been duly confirmed by the supreme court, chancery cannot interfere to correct an error of the commissioners, in estimating the amount of damages for lands taken, or of benefit to lands not taken; or in neglecting to assess lands which will be benefitted by the improvement, and which ought to have been assessed.

In opening streets in the city of New-York, where property is taken in which different persons have separate and distinct estates or interests, the proper mode of estimating the damage to the owners by the taking of the property, is to ascertain the damage to the fee of the lot, in the same manner as if one person only had the whole title or interest therein, and then to apportion the amount among the different persons interested in the lot, as landlord and tenant or otherwise, according as the interest of the one or the other will be affected by the taking of the land for the improvement.

The twelfth section of the act of April, 1839, relative to the city of New-York, only requires that the costs and charges of the commissioners, attorney, counsel, &c. should be regularly taxed before they are paid to the persons who have performed the services; not that they shall be taxed before the assessment is made and confirmed; which from the nature of the proceedings cannot be done.

The corporation of the city of New-York, as at present organized in two separate boards, under its amended charter of 1830, has the power to lay out new streets and to alter old ones, in that part of the city not embraced in the permanent plan of improvement.

The corporation of New-York, for all legislative purposes, is convened in common council when the aldermen and assistants convene in their separate chambers; as directed by the act of 1830, amending the city charter.

The passing of an ordinance to authorize the opening of a new street or the alteration of an old one, under the 177th section of the act of April, 1813, to reduce the several laws relating particularly to the city of New-York into one act, is the exercise of a legislative and not of a judicial power.

Where the proceedings of the common council of New-York in relation to the opening of a street are void in law, and such nullity appears upon the face of the proceedings themselves, a sale of the complainant's property

under such proceedings, will not cast such a cloud upon his title as to au-
thorize the court of chancery to interfere by injunction to stay the sale.
A proceeding which upon its face is not only illegal but absolutely void,
does not constitute a cloud upon the title to real estate, against which a
court of equity will relieve.

It seems, that the provision in the act of April, 1830, relative to city of New-
York, requiring the ayes and noes in certain cases to be taken and pub-
lished, is merely directory; so far as relates to the publication.

THIS was an application for an injunction to restrain
the collection of an assessment for the widening, straight-
ening and improving John-street, in the city of New-York,
between Broadway and Pearl-street. From the bill it ap-
peared that the ordinance of the common council authori-
zing and directing this improvement, was passed in Feb-
ruary, 1836; that shortly afterwards the supreme court
appointed commissioners of estimate and assessment, who
made their report in 1838, and the same was presented to
that court for confirmation, but was afterwards sent back
to the commissioners for revisal and correction; that the
amended report was confirmed by the court in September,
1839; and that the order for the making of the improve-
ment was carried into effect in May, 1840. The complain-
ant charged in his bill, upon information derived from E.
Merriam, that the ayes and noes were not called, upon the
adoption of the resolution of the common council autho-
rizing the making of the improvement; nor were the
votes of the aldermen and assistants, and the report of
the committee on streets, upon which the ordinance was
founded, published in any of the newspapers employed by
the corporation. Various objections were stated in the
bill as to the equity and justice of the assessment upon
property which was supposed by the commissioners to be
benefitted by the improvement; which objections are no-
ticed in the opinion of the court. The complainant also
stated in his bill that the improvement was not within the
part of the city as to which a permanent map and plan
were required to be made by the commissioners, under the
act of April, 1807, and he therefore insisted that the com-
mon council, as organized under the act of 1830 amend-

ing the charter of the city, had no jurisdiction or authority to widen or alter John-street.

*Ward Hunt & L. H. Sandford,* for the complainant.

*Peter A. Cowdrey,* for the defendants.

THE CHANCELLOR. The language of the bill in this case leaves it doubtful whether the complainant, at this time, is the onwer of, or has any interest in any of the lots mentioned in the bill as having been assessed for this improvement. And so far as his personal liability is concerned, this court does not interfere to prevent a mere trespass upon personal rights, or personal estate, where the complainant has a perfect remedy at law. The bill, instead of alleging in the usual manner that the complainant was at a particular date and still is the owner of the lots upon which the assessment for benefit was imposed, merely states as to the first twelve lots that he was the owner and possessor thereof, on or before the first of September, 1836 ; and as to the other lots, he states that he was the owner and possessor of them subsequent to the 1st of May, 1839. Neither does the verification of the bill, by the complainant's agent, show that the agent has any information on the subject; or that he even believes the complainant is now the owner of those lots. As this defect in the bill can probably be cured by an amendment, I shall proceed to examine the objections made to the legality and equity of the assessment; and the question whether the bill in other respects presents a proper case for the interference of this court by a preliminary injunction.

The objection that the delay of the corporation in bringing the proceedings to a close until the spring of 1840, produced injustice, by giving to the tenants of property which was to be taken for the improvement, and who had short leases thereof, compensation for a loss which they did not sustain, does not appear to be one which in any

1841.

Wiggin
v.
Mayor, &c. of
New-York.

manner concerns this complainant. That appears to be a question entirely between the landlords and tenants of the property taken for the improvement. If the tenant has a beneficial lease, that is, if he has rented the property for a term of years at less than the use of the property was actually worth, he sustains damage by being deprived of the occupancy at this low rent during the remainder of his term. But that damage must necessarily go to diminish the amount which the landlord would have been entitled to receive if the property had not been under a lease; or had the rent reserved upon the lease been the full value of the use of the lot. The proper way of assessing the damages where two or more persons have distinct interests or estates in property taken for the improvement, is to ascertain the damage to the whole fee of the lot in the same manner as if one person alone had the entire interest therein; and then to apportion the amount among the persons interested in the lot, as landlord and tenant, or otherwise, acccording as the interest of the one or the other will be affected by the taking of the property for the improvement. In such a case, where a tenant had a lease of the property for four or five years at a nominal rent, he would be entitled to damage for taking such interest in the property if it was taken immediately. But in that case the commissioners would not allow any thing to the landlord on account of the loss of rent for the same time. And where in a case of that kind the apportionment had been made upon an estimate that the proceedings would probably be completed at the expiration of a year, so that the tenant would be dispossessed at that time, if by any unforeseen occurrence the completion of the proceedings were procrastinated till the expiration of the lease, the landlord would sustain the whole damage by the taking of the property, and the tenant nothing. But the amount of the assessment for benefit upon the property of other persons would not thereby be increased. For the benefit to their property, from the making of the improvement, would commence as soon as they were compelled to pay the assessment impos-

ed therefor.  In the case of *Gillespy* v. *The Mayor, &c. of New-York*, in the court for the correction of errors, in December, 1839, (23 *Wend. Rep.* 643,) I had occasion to examine the whole of the statutory provisions on the subject of the apportionment of rent and damages as between landlord and tenant, where a part of the property is taken for an improvement during the continuance of the lease.  And from that examination I am satisfied, that if the commissioners of estimate and assessment made their assessment in this case upon correct principles, in relation to the rights of the lessees and owners of the leasehold property taken for the street, the delay in completing the proceedings could not injure this complainant, so as to give him any equitable rights even as against the tenants themselves; whatever equitable claim their landlords may have against them on that account.

I am inclined to think the commissioners erred in not assessing the property at the corner of William-street in the same manner as if the contemplated widening of that street, which was subsequently abandoned, had never been thought of; as that improvement had not been directed when these commissioners were appointed to assess the damages and benefits with reference to the widening of John-street merely.  But if there was any error in this respect, it was a proper ground for opposing the confirmation of the report before the supreme court, and cannot be reviewed in this collateral manner.  In the case of *Messerole* v. *The Mayor, &c. of Brooklyn*, (8 *Paige's Rep.* 198,) referred to on the argument, the commissioners had not erred in judgment as to what property was to be benefitted by the contemplated improvement and neglected to assess it on that ground.  But they had by mistake left out the greatest portion of the lands which were to be taken from the complainants for the contemplated avenue.  And the report showed upon its face that the court had no jurisdiction or authority to confirm the assessment; according to the decision of the supreme court in the case of *Anthony-street*, (20 *Wend.* 618.)  There the

court held that if the proceedings had been regular, and the commissioners had only erred in judgment in fixing the amount of the damage for the lands taken, or of the benefit to other lands of the complainant, upon erroneous principles, the court of chancery could not interfere after the report had been properly confirmed. In this case, if the front of the lots on William-street which were not assesssd would actually be benefitted by this improvement, the commissioners erred in judgment in not assessing for the benefit to the front as well as to the rear of the lots; and the confirmation of the report should have been opposed on that ground. But as that was not done, the confirmation of the report estopped the owners of other property which was assessed from alleging that the fronts on William-street would be benefitted by the improvement.

The same answer is applicable to the objection that $100 was included in the assessment for surveying and grading the triangle opposite to Cliff-street, under the resolution of May, 1837.

As the bill alleges that the costs of the proceedings have not yet been taxed, it cannot now be known whether the amount of the assessment will be more or less than the amount allowed for damages, and the costs and expenses of making the improvement. The mode of conducting these proceedings, as prescribed by law, is such that the assessments must be made and confirmed before the whole expense and costs of the proceedings can be ascertained. The commissioners after having ascertained the damages for property taken must necessarily proceed upon mere estimates of some of the costs, &c. which will probably be incurred thereafter in completing the proceedings. A mistake of a few dollars, therefore, one way or the other, in estimating the amount of the expenses, cannot vitiate the whole assessment and take from the supreme court the power to confirm a report founded upon a reasonable estimate of the prospective costs. The act of the 20th of April, 1839, (*Laws of* 1839, *p.* 185, §§ 1, 2,) only requires the costs and charges of the commissioners, and attorney and

counsel, &c. to be taxed before they are *paid ;* and not that they should be taxed before the assessment is made and confirmed ; as that could not be done. It is no objection, therefore, to the collection of the assessment, that those costs had not been taxed when this bill was filed.

The objection that the corporation, as at present organized, has not the right to lay out new streets or to alter old ones in that part of the city which was not embraced in the permanent plan of improvements, adopted by the commissioners appointed under the act of the 3d of April, 1807, is one which, if well taken, would render the whole proceedings under the ordinance for the widening of John-street absolutely void. The power to open new streets or to alter old ones, in this part of the city, is claimed by the corporation under the second clause of the 177th section of the act of the 9th of April, 1813, to reduce the several laws relating particularly to the city of New-York into one act. (2 *R. L. of* 1813, *p.* 409.) By that clause the power was expressly given to the corporation, whenever and as often as it should in the opinion of the mayor, aldermen and commonalty, *in common council convened,* be necessary, or desirable for the public convenience or health, to lay out, form and open new streets, &c. in that part of the city ; or to extend, enlarge, straighten, alter, or otherwise improve, streets, &c. already laid out, or thereafter to be laid out.

It is not pretended that previous to the act of April, 1830, to amend the charter of the city of New-York, the corporation, when convened in common council under the charter and the laws then in force, would not have been authorized to pass an ordinance for the making of this improvement. But the act for the amendment of the city charter directs that neither the mayor nor the recorder shall be a member of the common council after the second Tuesday of May, 1831. It also vests the legislative power of the corporation in a board of aldermen and a board of assistants, who together are thereafter to form the common council of the city ; which boards are to meet in sep-

arate chambers, &c. And the complainant's counsel, there-fore, insist that the mayor, aldermen, and commonalty can no longer convene in common council, to direct the laying out a new street or the altering of an old one, as they were previously authorized to do, under the act of 1813.

The conclusive answer to this objection is, that the act of 1813 gives the power to the corporation of the city, when convened in common council according to the provisions of its charter, and not to the particular officers who at that time represented the corporation in common council. And the act of 1830 having excluded the mayor and recorder from the common council, and directed the aldermen and assistants to convene as a common council in two separate boards, " *the mayor, aldermen and commonalty of the city,*" that is, the corporation under its corporate name, is convened in common council, for all legislative purposes, when the two boards convene in different chambers, and pass a resolution or ordinance subject to the qualified veto of the mayor. The power to pass an ordinance authorizing the opening of a new street or the alteration of an old one, under the 177th section of the act of 1813, was strictly a legislative power given to the corporation, represented in its common council duly convened under its charter ; as much as the passage of a statute by the state legislature, for the opening of a state road, or the alteration or enlargement of a canal, and appointing commissioners to appraise damages, &c. would be the exercise of a legislative power by the people of the state, represented in their senate and assembly. And this legislative power which still belongs to the mayor, aldermen and commonalty of the city of New-York, under the act of 1813 which is in full force, was properly exercised by the corporation convened in common council in the manner prescribed by the act of 1830.

Again ; if the complainant was right in supposing that the common council, as at present organized, had no authority to pass an ordinance for the widening of John-street, he is neither entitled to a preliminary injunction nor to

any relief whatever in this court, as his defence is perfect at law. And if the whole proceedings in relation to the opening of that street were absolutely void in law, and that fact appears upon the face of the ordinance itself, a sale for the assessment upon the complainant's lots would not even create a cloud upon his title. For as every person must be presumed to know the law, a proceeding which is upon its face not only illegal but absolutely void, does not constitute a cloud upon the title to real estate against which a court of equity will relieve.

This is also a sufficient answer to the objection that the ordinance was void because it appeared from the record that it was passed without calling for the ayes and noes upon the question of its adoption by the respective boards ; if that neglect was in point of law sufficient to invalidate such ordinance. It is not necessary, therefore, that I should express any opinion at this time upon the question whether the seventh section of the act of April, 1830, requiring the ayes and noes to be taken and published in certain cases, applies to this case ; or whether the last clause of that section applies merely to improvements which are to be paid for out of the funds of the corporation generally, or by a tax or assessment upon the citizens at large, and not to cases where the owners of property benefitted by the proposed improvement are to bear the whole expense thereof. As that question was not argued before me, I have not examined it. But if the provision is applicable to a case of this kind, I think it is merely directory as to the *publication* of the report and of the ayes and noes upon the question of the adoption of the ordinance for the proposed improvement. The neglect to make such publication did not therefore, of itself, render the proceedings void, if the ordinance was not void upon the face of the record of its adoption.

There is another substantial reason why this court should not interfere in this case by injunction to prevent the corporation from collecting the assessment, but should leave the complainant to his remedy, if he has any, at law. The

proceedings for the making of the improvement were commenced nearly five years since, and the complainant had waited until the improvement had actually been completed several months before he or his agent attempted to interfere. His property has received the full benefit that it could receive from the improvement; which benefit the commissioners have estimated at several thousand dollars. And as property of other persons to a very large amount has been destroyed for that purpose, justice requires that it should be paid for by those who have been benefitted by the improvement, rather than by a general tax upon the city at large. A court of equity, therefore, at this late day, will not interfere with its strong arm to cast the burthen of the improvement from those who have been benefitted thereby, and upon those who have not.

It is true the complainant alleges in his bill that his property is not benefitted by the improvement. But that allegation is not sworn to by any one, and it is, of course, contradicted by the report, under oath, of the three very respectable and intelligent commissioners by whom the assessment was made.

The application for an injunction is therefore denied, with costs.