Rodenbeck, J. (dissenting).
The claimant is the lessee of a farm in Washington county upon the eastern end of which there is a stone quarry. At the western end is the Delaware and Hudson railroad. Wood creek crosses the farm between these two points but considerably nearer the western end. The claimant leased the quarry and a right of way to the railroad. The State appropriated for the Champlain canal a strip of land comprising thirty and sixty-six one-hundredths acres from the western end of the farm, and by so doing cut off access to the railroad from the remainder of the farm. The claimant insists that the only practical and profitable way of transporting the products of the stone quarry to the railroad is by means of a railroad track across Wood creek and the appropriated land and claims that by intercepting the track of the railroad the State made its lease practically valueless. The State on the other hand claims that Wood creek, which was reserved in the State patent “ as a common highway for the benefit of the public,” could not be crossed by the claimant- except with the permission of the State, which the claimant had not obtained, and that the construction of the canal is an improvement of the navigation of the creek within the power of the State to improve navigation without making compensation for consequential damages, and that the claimant is entitled only to the value of its right cof way over the appropriated land and such fixtures as it may have attached to the land before the appropriation.
My associates sustain the contention of the State, and I dissent from the award upon the grounds hereinafter stated.
First. It seems to me that the claimant has. the right to bridge Wood creek, under the language of the reservation in *464 the patent of the State, which excepted the creek as a “ com-' inon highway.” |
The title to the land in question - comes through a State patent, known as the Artillery Patent, comprising a part of the township of Port Ann, dated October 25, 1764, which patent excepts Wood creek as a common highway in the following language: “ Excepting the said Wood creek which is reserved as a common highway for the benefit of the public.” The creek at that time was, undoubtedly, navigable in fact; but it was what was then known in law as a non-navigable stream, that is, the tide did not ebb and flow in it; and the ' language of the patent, under the common law, would not except the fee of the bed of the creek, but would except merely a public easement over the waters of the creek. Under the common law a grant of land bordering upon a non-tidal stream such as this was carried the title to the middle of the stream, unless there was an express reservation. In this instance there is an express reservation; but it is a reservation of the creek for certain purposes, that is, “ as a common highway for the use of the public.” The fee of the land under the water of the creek went to the patentee under the doctrine of the common law and by conveyance has come down to the present owner. The first State Constitution preserved all grants of land within the State made by the authority of the King or his predecessors (State Ctonst. 1777, art. 36), and made applicable to the new State such parts of the common law of England as formed the law of the colony on April 19, 1775, “subject to such alterations and provisions as the Legislature of this State shall from time to time make concerning the same.” State Const. 1777, art. 35. Subsequent Constitutions have likewise made such parts of the common law applicable as formed the law of the colony* on April 19, 1775, “ which have not “since expired or been repealed or altered.” State Const. 1821, art. 7, § 13; State Const. 1846, art. 1, § 17; State Const. 1894, art. 1, § 16. There has been no constitutional amendment or legislation expressly changing the rule applicable under the common law to the interpretation of grants upon non-tidal streams like Wood creek, although the common law of this country *465 has made some modifications of the rule with reference to boundary streams such as the Niagara and S't. Lawrence rivers and Lake Champlain. With these exceptions, the rule of the common law is in full force, preserved as it is by the express language of the Constitution. The creek is undoubtedly subject to the public easement, and as one of the public the owner of the farm and his lessee have a right of way along and across the creek in such a manner as will not interfere with the rights of the public. The claimant, therefore, had certain riparian rights, as the lessee of the owner of abutting land and as one of the public, in the creek which could not be interfered with; and the State, because of the reservation in the patent, could not prevent the claimant from such a reasonable use of the leased property and such a reasonable exercise of the rights possessed in the creek as might be necessary to the full enjoyment of the leasehold. These riparian rights include not only the right to the use of the waters of the stream but to the use of the bed of the stream, so far as its use does not interfere with the public rights. The rights of. the riparian owners survived the navigability of the stream; and, when the stream became dry and unnavigable, riparian owners had the right to cross the channel of the stream and, if necessary, construct a suitable bridge for that purpose. We are dealing in this case with a creek which is not navigable in fact and the bed of which is held by the owners of the upland; and there is ample authority justifying the conclusion that, under such circumstances, the riparian owners have a right to construct a bridge over the stream and to place piers, if necessary, in the bed of the stream, so long as the public right of way is not interfered with. Chenango Bridge Co. v. Paige, 83 N. Y. 178; Groat v. Moak, 94 id. 115. In the last two cases Judge Earl says: “Any person owning the land upon both sides of such a river (Chenango river) can maintain a ferry or bridge or dam for his own use, provided he does it so as not to interfere with the public easement, without authority from the legislature, and even in defiance of a legislative prohibition.” Assuming that the river (Susquehanna river) is technically *466 a public highway, it has long since ceased to be practically navigable. Although it was a public highway, subject to the public easement for navigation, the riparian owner had the right to bridge it, or dam it, or do any other act which the riparian owners upon streams not navigable could do, and to enable him to do so he needed no act of the Legislature.
Second. The right of the claimant to construct a bridge across the creek could not be taken from it without making compensation, under the guise of the power of the State to improve the navigation of the creek.
In considering this phase of the case it must be borne in mind that we are dealing with a narrow stream, not over fifteen feet in width where it passes through the appropriated land, dry in certain seasons of the year and in certain places, and unnavigable at the time of the appropriation, being reserved by the State “ as a common highway for the benefit of the public ” in its patent. The reservation, it will •be observed, was of the creek as a “ common highway ” and was for the benefit of the public, which, of course, includes the owners of land along its banks and their lessees.
It must also be kept before the mind that the State proposes to substitute for this narrow creek, in which the public and the claimant had an easement as in a common highway, a canal seventy-five feet wide on the bottom and twelve feet deep, owned by the State as its private property, in which the public and adjacent owners will have such rights as may be granted by the State. State Const., art. VII, § 9. The State is, therefore, substituting a new and different highway for the one in existence at the time of the appropriation and is not improving, extending or enlarging the rights possessed in a natural stream by the claimant, but destroying those rights and substituting an artificial channel subject to the control of the State.
There is no doubt that there exists in the State a sovereign right with respect to navigable streams which modifies the riparian rights of individuals. The Federal Constitution invests Congress with the power to regulate commerce, and this comprehends the power to regulate navigation for that purpose. Gibbons v. Ogden, 9 Wheat. 1. Under this power *467 the State may make certain improvements in streams navigable in fact (Sage v. Mayor, 154 N. Y. 61; Scranton v. Wheeler, 179 U. S. 141; Gibson v. United States, 166 id. 269), but this power is subject to the further principle that no private property can be taken for public use without just compensation. Federal Const., art 5; State Cant, art. 1, § 6; Commissioners of Canal Fund v. Kempshall, 26 Wend. 404; Smith v. City of Rochester, 92 N. Y. 463; Waller v. State of New York, 144 id. 579; Lakeside Paper Co. v. State, 15 App. Div. 169; Pmnpelly v. Green Bay Co., 13 Wall. 166; United States v. Lynah, 188 U. S. 445; Lowndes v. United States, 105 Fed. Rep. 838.
While these two principles are well understood, difficulties arise in applying them to particular facts. It is often not an easy matter to decide whether the rights affected in a particular case are rights that are recognized as “ property ” under the Constitution and whether or not the acts of the State constitute a “ taking ” of these rights.
In this case we are concerned with the appropriation of riparian rights, the State taking from the claimant certain rights in Wood creek which it leased from the owner of the appropriated land.
These riparian rights are “ property ” under the Constitution. Forster v. Scott, 136 N. Y. 557; Pape v. New York & Harlem R. R. Co., 74 App. Div. 188. Easements of light, air and access appurtenant to abutting lots have been held to be property rights protected by the Constitution, where the State authorized the construction of an elevated railroad in a public highway. Storey v. New York El. R. R. Co., 20 N. Y. 122; Lahr v. Metropolitan El. R.R. Co., 104 id. 268; Reining v. N. Y., L. & W. R. R. Co., 128 id. 157; Muhlker v. Harlem R. R. Co., 197 U. S. 568. A vault under a sidewalk in a city, constructed with the permission of the city authorities by the owner of the abutting building, is property. Matter of Brooklyn Union El. R. R. Co., 155 App. Div. 111; Parish v. Baird, 160 N. Y. 302. A franchise to take tolls for the use of certain locks and dams which had been constructed and maintained under competent authority by a navigation company is property. Monongahela navigation Co. v. United *468 State, 148 U. S. 341. A ferry franchise is property. Mayor v. Starin, 106 N. Y. 1. A franchise granted by a municipality to operate a street railway in a public highway is property. People v. O’Brien, 111 N. Y. 1; Sixth Ave. R. R. Co. v. Kerr, 72 id. 330; People v. Sturtevant, 9 id. 263. Kiparian rights are property. Lewis Em. Dom., §§ 68, 73; Gould Waters, § 204; Cooley Const. Lim. (7th ed.) 863; Morgan v. King, 35 N. Y. 454. The right of access to tide water from land originally under water upon which a wharf had been built, granted with the right of wharfage, is property. Langdon v. Mayor, 93 N. Y. 159. The right of access of upland owners to a tide-water river or body of water is property. Rumsey v. N. Y. & N. E. R. Co., 133 N. Y. 76; Saunders v. N. Y. C. & H. R. R. R. Co., 144 id. 75; Town of Brookhaven v. Smith, 188 id. 74; Matter of City of New York, 168 id. 123.
The riparian rights .in this case being a “ property ” right, they cannot be taken by the State under the circumstances of this case without compensation. :
In the case before us the State does not confine its improvement to the bed of the stream, but annihilates a natural stream and substitutes another and artificial channel. The creek being only about fifteen feet wide was easily spanned by a bridge; but the construction of a bridge over a canal one hundred or more feet wide by the owner of a farm through which it passes, even if the State consented to its construction, is prohibitive on account of the expense. If the claimant had the same rights in the canal that it had in the creek, 'there might be some equity in the claim that it would not be entitled to compensation, but its rights in the canal will be far different from those that it possessed in Wood creek. The latter was a stream, unnavigable at the time of the appropriation, reserved as a “ common ” highway. The proposed canal will be an artificial channel owned by the State, with such rights in the claimant, as the lessee of the abutting owner, as the State may see fit to grant. Under such facts there was a taking of the claimant’s riparian rights which included the right of passage and the right to construct a bridge over the creek.
*469 It may be stated as a rule that, where there is a physical invasion of property, whether in the exercise of the power of eminent domain or under the authority of the State to improve navigation, compensation must be made. Gould on Waters states this rule as follows: “So the diversion, pollution or other use of a private stream by public authorities impairing or destroying the rights of riparian owners to the water is a taking for which compensation must be provided.” § 243. Lewis, in his work on Eminent Domain, says: “According to principles heretofore laid down it follows that any injury to riparian rights for public use is a taking for which compensation must be made.” 2d ed. § 84. See also Gilzinger v. Saugerties Water Co., 66 Hun 172; affd., 142 N. Y. 633; Crooker v. Bragg, 10 Wend. 260; Commissioners of Canal Fund v. Kempshall, 26 id. 404.
In Yates v. Milwaukee, 10 Wall. 497, the court said:
“ On the whole we are of opinion that Shepardson, as riparian owner of a lot bounded by a navigable stream, had a right to erect this wharf, and that Yates, the appellant, whether he be regarded as purchaser or as licensee, has the same right; and that if the authorities of the city of Milwaukee deem its removal necessary in the prosecution of any general scheme of widening the channel and improving the navigation of the Milwaukee river, they must first make him compensation for his property so taken for the public use.” p. 507.
Cooley on Constitutional Limitations says: “Although the regulation of a navigable stream will give to the persons incidentally affected no right to compensation, yet if the stream is diverted from its natural course, so that those entitled to its benefits are prevented from making use of it as before, the deprivation of the right is a taking which entitled them to compensation, notwithstanding the taking may be for the purpose of creating another and more valuable channel of navigation. The owners of land over which such a stream flows, although they do not own the flowing water itself, yet have a property in the use of that water as it flows past them, for the purpose of producing mechanical power, or for any of the other purposes for which they can *470 make it available, without depriving those below them of the like use, or encroaching upon the rights of those above; and this property is equally protected with any of a more tangible character.” 7th ed., p. 807.
The riparian rights of the claimant being property rights and the improvement being made by the State constituting a taking of these rights, compensation must be made therefor.
The tendency of judicial construction is to give full .force to the provisions of the Constitution of the United States and the several States requiring compensation to be made where private property is taken for public use, whether such use is required for the improvement of a private stream or body of water or in the construction of an enterprise not associated with water courses. In Scranton v. Wheeler, supra,, in his dissenting opinion, Hr. Justice Shir as, with reference to the right of access to a stream in which the owner of the upland had no title to the bed of the stream, says: “ I think this question may well be answered in the words of Gould in his work on waters (2d ed., p>. 151): : When it is conceded that riparian rights are property the question as to the right to take, them away without compensation would appear to be at an end.’ ”
The views herein expressed seem to have been those entertained by the State when it began its proceedings to acquire the title to the land occupied by claimant. It did not purport to proceed under its power to improve the navigation of Wood creek, but proceeded under its power of eminent domain. Barge Canal Act, Laws of 1903, chap. 147.
Conceding that the State has taken the rights of claimant in Wood creek under its power to improve navigation, the State also had power to provide for compensation, as it seems to have done in this case. O’Connor v. Pittsburgh, 19 Penn. St. 190; Transportation Co. v. Chicago, 99 U. S. 635; United States v. Alexander, 148 id. 186; People v. N. Y. O. & W. R. R. Co., 133 App. Div. 476.
Third. If the views herein expressed are correct, the damages awarded the claimant are inadequate; but it does not follow that the claimant is entitled to the damages which it sought to prove upon the trial, since those damages were *471 based upon the proposition that it is entitled to recover for the loss of- profits.
There are many cases allowing profits for the breach of a contract and even in cases of tort (Lakeside Paper Co. v. State, 45 App. Div. 113; Bates v. Holbrook, 89 id. 548; Egan v. Browne, 128 id. 184; Bagley v. Smith, 10 N. Y. 614; Snow v. Pulitzer, 142 id. 263; Danolds v. State, 89 id. 36); but there are also cases holding that loss of profits is not recoverable. Moravec v. Grell, 78 App. Div. 146; Hoffman v. Edison Electric Illuminating Co., 87 id. 371; Griffin v. Colver, 16 N. Y. 494; Wehle v. Haviland, 69 id. 488; Witherbee v. Meyer, 155 id. 446; Reisert v. City of New York, 174 id. 196.
The rule deducible from these cases is that loss of profits is not recoverable where the profits are too remote, uncertain and not the direct and immediate result of the acts complained of (Witherbee v. Mayor, 115 N. Y. 446) ; and, if this is the rule in cases arising out of a contract or in tort, how much more rigidly should it be applied in cases of eminent domain, where the appropriations are made for the public good. Lewis Em. Dom. (2d ed.), § 487; 15 Cyc. 733, 735.
The true rule for measuring claimant’s damages, assuming that it had the right to bridge the creek and that the State could not take away this right without compensation under its power to improve navigation, is the difference in the value of its leasehold interest before and after the appropriation.
In this ease the lease provides that the structures placed upon the property shall be considered personal property, removable by the lessee at the expiration or termination of the lease. Most of the structures were placed upon the property after the appropriation and cannot, therefore, be taken into consideration in estimating the damages; but, so far as the claimant had placed upon the property structures affixed to the soil more or less permanent in character, even though denominated personal property in the lease, it is entitled to have them considered in fixing-the damages. Appointment of Park Comrs., 1 N. Y. Supp. 763; Matter of City of N. Y., 130 App. Div. 600. The rule for measuring the compensa *472 tion is not changed by the fact that improvements had been made upon the property by the tenant prior to the appropriation.
Where the whole property is appropriated and no benefits are involved, the question is, what was the market value of the property at the time of the appropriation, taking into account all improvements upon it which form a part of the realty, whether made by the owner or the tenant. Having determined the compensation of the owner, the question then is, what was the market value of the lease at the time of the appropriation, taking the permanent improvements made upon the property into consideration, however the owner and tenant may have designated these improvements in the lease. If the market value of the lease exceeds the rent and other consideration which the tenant was required to pay for the remainder of the term, he then suffers a loss as a result of the appropriation. If the market value of the lease equals or is less than the rental and other considerations for the unexpired term of the lease, no damages were occasioned to him. The owner receives the market value of the property which makes him good for any rent which he could have received had the appropriation not taken place; and the tenant being relieved by the appropriation from the payment of rent, he suffers no loss, unless the rental value of the property has risen since the making of the lease or he drove a good bargain in making the lease. In the latter case, the tenant is entitled to the difference between the market value of the lease for the unexpired term and the actual rental and other consideration which he would have been required to pay for the unexpired term under the lease. The amount thus arrived at as the damages of the tenant must come out of the damages to the fee, since the lease is an incumbrance which the owner has placed upon the fee and reduces the value of the fee to that extent. Lewis Eminent Domain (2d. ed.) § 483; Matter of N. Y., W. S. & B. R. R. Co., 34 Hun, 638; Matter of City of New York, 128 App. Div. 701.
Where only a part of the property is taken the measure of damages is the same as when the -vyhole of the property is taken. It is a question of the market value of the property *473 and of the leasehold before and after the appropriation. So far as the owner is concerned, the difference between the market value of the property before and after the appropriation is the compensation to be allowed for the fee taken and in appraising these damages all improvements which have become a part of the realty must be considered whether placed there by the owner or by the tenant. The difference thus arrived at is all that the State can be required to pay for the appropriation and out of it must come all liens and incumbrances upon the fee including leasehold interests. Lewis Eminent Domain (2d ed.) § 483. In determining the damages to the liens and incumbrances the same rule applies and compensation must 'be made which will represent the depreciation in the market value due to the appropriation. In the case of a lease another calculation comes in since there must be an estimate of the depreciation in the lease rental value as well as an estimate of the depreciation of the market rental value. The difference in the market rental value of the lease does not represent the amount of compensation for a tenant is not liable for the payment of any rent or other consideration for the part taken. Lewis Eminent Domain, § 483; Lodge v. Martin, 31 App. Div. 13 ; Gillespie v. Thomas, 15 Wend. 464; Matter of Daly, 29 App. Div. 286. The depreciation in the lease rental value is not the measure of the damages, for the market rental value of the property may be more than the amount agreed to be paid. If the market rental value is greater than the lease rental value the tenant will suffer a loss, otherwise not. If the market rental value is the same or less than the lease rental value, it is merely a question of apportioning the rent and other consideration where part- of the property is taken and relieving the tenant equitably from all rent and other consideration for the part taken. The question therefore as to a tenant, where a part only of the premises is taken, is, first, what was the market rental value of the property before and after the appropriation, and, second, what was the lease rental value before and after the appropriation. The difference in the lease rental value -will be the amount which the tenant will be required to pay for the use of the land remain *474 ing and the amount of the lease rental value of which he will be relieved must come out of the difference between the market. rental value before and after the appropriation. These considerations must be taken into account by the witness in estimating the compensation to which the tenant is entitled and are included in answering the question as to the market rental value of the leasehold before and after the appropriation. In answering this question the witness is supposed to take into account not only the market rental value of the lease but the fact that there may be an apportionment of the consideration named in the lease for the unexpired term including the rent agreed to be paid as well as taxes, renewTals and other considerations. The question to be put to the witness therefore is, what was the market rental value of the leasehold before and after the appropriation and if he has taken all proper considerations into account his answer will represent the tenant’s compensation. Where benefits are involved the actual value of the land taken must be allowed and the benefits, if any, must be offset against the remainder of the property (Matter of City of New York, 190 N. Y. 350) and there is no reason why this rule cannot be applied in determining the damage to liens and incumbrances including leasehold interests where benefits must be taken into account.
1 Fourth. The owner of the leased premises in this claim is entitled to be heard upon any questions connected with his interest, since the lease is an interest in the fee and the compensation awarded must come out of that allowed to the owner for the taking of the fee and will reduce to that extent the compensation to which he may be entitled.
Ho award can bind the owner until he has been brought into court and given an opportunity to protect his interest. Due process of law requires that he shall be given a day in court. He was not a party to the claim, and his claim has not been considered. He should be brought in by order of the court. The abstract shows that he had assigned his interest to the tenant before the filing of the claim. The claim filed by the tenant, however, is only for the damages to the leasehold. The interests of the owner were not considered at *475 the hearing. The case was tried upon the apparent assumption that the owner’s claim was still to be adjusted. Whether or not his claim has been assigned, he should be brought in as a party, so that any question as to his compensation or as to the validity of the assignment or the lease itself or its construction may be finally passed upon and the interests of the State thus protected. The necessity for giving the owner an opportunity to be heard seems to have been in the mind of the learned Attorney-General; for, at the opening of the trial, a motion was made on behalf of the State that the owner of the premises be brought in as a party, so that all of the persons interested in the appropriated land might be before the court. This motion was denied, and its denial presents a serious question as to whether or not the court can make a valid award to the claimant.
It is not necessary at this time to discuss the question as to the jurisdiction of the court to pass upon issues that may arise in appropriation cases between parties having an interest in the land and making claims against the State. It might be contended that the jurisdiction conferred upon the court by the statutes authorizing it to pass upon claims against the State and to fix the compensation for land taken vests in the court jurisdiction to pass upon all incidental questions that might arise between parties making claims for compensation in connection with the same parcel of land; but many strong reasons might be advanced why an appraiser, board or court or other body, by whatsoever name, could not be vested with authority to try such issues, in view of the judiciary article of the Constitution creating courts for the trial of disputes between citizens. This question of jurisdiction, however, may be reserved until it is more squarely presented than it is at this stage of the claim; and it is sufficient to say, just now, that, before- any issues between the owner and the tenant are passed upon, the interest of the State requires that the owner should be made a party and should be given an opportunity to be heard. It may be said in conclusion, however, that where the owner has been made a party to a proceeding brought by a tenant and consents to have the issues between him and his tenant deter *476 mined by the Court of Claims, the court has jurisdiction to pass upon the issues involved between them. Code Civ. Pro. § 281; People ex rel. Platt v. Rice, 144 N. Y. 249; Matter of Porter, 34 App. Div. 150; Anderson v. Reilly, 66 N. Y. 139.
The award, therefore, is erroneous, because the court has disregarded the rights of the claimant in Wood creek; and the compensation should not be fixed until the owner has been made a party and has been given an opportunity to be heard upon all the issues involved which are cognizable by, this court.
Judgment accordingly.