(Supreme Court, Appellate Division, Third Department.   June 24, 1909.)

1. COMPROMISE AND SETTLEMENT (§ 18*)—RESCISSION.

The law favors settlements out of court, and where a settlement has been honestly made by parties, with full knowledge of the facts, neither is at liberty to recede from it for the sole reason that he has made a bad bargain.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. § 76; Dec. Dig. § 18.*]

2. EMINENT DOMAIN (§ 95*)—COMPENSATION—EXPENSES INCURRED—POWER OF STATE OFFICERS TO MAKE AWARD.

Laws 1850, p. 224, c. 140, § 28, subd. 5, authorizes railroads to cross the streams and canals of the state, but in a manner not to impair their usefulness, provided that the act should not be construed to authorize erection of the bridge across any stream or lake navigable by steam or sail boats at the place where such bridge is to be placed. Laws 1869,

p. 142, c. 84, § 3, authorized defendant's predecessor to construct a bridge over Fish creek, "the said creek having been abandoned by the state as a part of the Oneida Lake Canal, subject, however, to the right of the state to resume the use of said creek at any time without making compensation." Laws 1903, p. 334, c. 147, § 3, provides that new bridges shall be built over the canals, to take the place of existing bridges wherever required or rendered necessary by the location of the canal. *Held*, that defendant railroad company was authorized to build a bridge over Fish creek, a stream that was not navigable, and that the board of appraisers, in taking defendant's land along the creek for canal purposes, were authorized to compensate it for damages incident to the building of a new bridge, necessitated by the taking of defendant's land for canal purposes.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 273; Dec. Dig. § 95.*]

3. NAVIGABLE WATERS (§ 1*)—TEST OF NAVIGABILITY—"NAVIGABLE."

A stream which is used only a few times in many years by a boat for a picnic or excursion is not "navigable," within the meaning of Laws 1850, p. 224, c. 140, § 28, subd. 5, authorizing railroads to cross streams, but providing that nothing in the acts shall be construed to authorize the erection of any bridge across any navigable stream or lake.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 7; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4675–4684; vol. 8, p. 7728.]

Appeal from Trial Term, Albany County.

Action by the People of the State of New York against the New York, Ontario & Western Railway Company. The complaint was dismissed, and the People appeal. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

The Attorney General (Charles F. Mackey, of counsel), for the People.

O'Brien, Boardman & Platt (Frank H. Platt, of counsel), for respondent.

JOHN M. KELLOGG, J. The action was brought to recover $118-161.66 paid the defendant by virtue of an adjustment made by the special examiners and appraisers under section 1, c. 335, p. 879, Laws 1904, in full compensation for the rights and property of the defendant taken for the barge canal under section 4, c. 147, p. 337, Laws 1903, and for the damage caused by such work or improvement. Such examiners are authorized to agree upon a price to be paid by the state and accepted by the owner in full compensation for such specific property or rights, or for the damage caused by such work or improvement. The agreement, with a detailed report, is submitted to the canal board, and if in its opinion, by means of such appraisal and agreement to acquire for the state a good title, and that it is for the advantage of the state to obtain such property without condemnation proceedings, or resort by said owners to the Court of Claims, the canal board may approve such agreement, and upon its certificate the agreed price is to be paid by the state. The provisions of the statute were fully complied with. This action is based upon the contention that no land or property of the defendant was condemned by the state, and that therefore the

state officers were not authorized to make any adjustment with the defendant, and that said moneys were therefore improperly and illegally paid.

The trial court found, and the finding is amply sustained by evidence, that the lands sought to be appropriated by the state upon either side of Fish creek, immediately after the waters of Wood creek join it, and for which the said adjustment and settlement was made, were the property of the defendant at the time the state appropriated the same for barge canal purposes. Fish creek, at the place in question, had been previously used for canal purposes, and the title to the bed of the stream was evidently in the state, and not in the defendant; but defendant owned upon both sides of the creek. By erosions and accretions, during many years, the banks of the stream had changed somewhat, and it is almost impossible to tell where the exact property line of the defendant is on each side of the stream. The state officers, therefore, had ample power to make a proper settlement and adjustment with the defendant for its lands taken. The parties upon both sides making the settlement had full knowledge of all the facts, and there was no mistake or fraud in the transaction. The defendant therefore received the money under a settlement made by proper state officials, who had knowledge of all the facts, and who acted honestly and in good faith, as they believed, for the best interest of the state. There is an entire failure to prove the cause of action alleged. The law favors settlements out of court, and where a settlement has been honestly made by parties, with full knowledge of the facts, neither is at liberty to recede from it for the sole reason that he discovers that he has made a bad bargain. When the state authorizes certain officers to settle for lands and properties which it has appropriated and damages it has caused, the effect of such settlement, the officers having jurisdiction and acting honestly and with full knowledge of the facts, is the same as a settlement between private persons.

It is, however, urged that in a way this settlement and adjustment is an exception to this rule, for the reason that the state officers adopted a wrong measure of damages, and that thereby the defendant was allowed a larger sum than he otherwise would have received. The property taken from the defendant was situated upon each side of the creek, across which it maintained and operated its railroad bridge, standing about nine feet above the water upon abutments resting upon its land. The figures accompanying the agreement of settlement seem to indicate that the settlement was based, in part at least, upon the amount which the state engineer and other state officers ascertained would be the cost of reconstructing the bridge after the creek was canalized. It is claimed that the defendant had no right to maintain this bridge there, and therefore that the plaintiff was under no obligations to rebuild or pay damages for the removal of the old one, and that in any event the allowance for the construction of a new bridge was outside of the jurisdiction of the state officers. We need not pass definitely upon these questions; but it is perhaps best to examine them somewhat, so that we may see whether the state's interests were fairly protected in the settlement.

Subdivision 5, § 28, c. 140, p. 224, Laws 1850, authorizes, railroads to cross the streams and canals of the state, but in a manner not to impair their usefulness, provided—

"nothing in this act contained shall be construed to authorize the erection of any bridge or any other obstruction across any or over any other stream or lake navigable by steam or sail boats at the place where any bridge or other obstruction can be proposed to be placed."

This stream was not navigated by steam or sail boats at the place where this bridge was constructed. The use of a stream a very few times in many years by a boat for a picnic or excursion cannot be deemed a navigation thereof within the meaning of this statute. Kerr v. W. S. R. R. Co., 127 N. Y. 269, 279, 27 N. E. 833. It was not necessary under this statute that the company should have the consent of the canal commissioners before constructing its original bridge in 1869 and the reconstruction in 1876 and 1886. N. Y. C. & H. R. R. R. Co. v. State of New York, 37 App. Div. 57, 55 N. Y. Supp. 685; affirmed after retrial 177 N. Y. 577, 69 N. E. 1127.

Chapter 84, p. 141, of the Laws of 1869 gave to the predecessor in title to the defendant certain rights of municipal aid and contained other provisions for its benefit. By section 3 it was—

"authorized to construct a bridge over Fish creek, in Oneida county, upon the plan of the engineer of said company, the said creek having been abandoned by the state as a part of the Oneida Lake Canal, subject however to the right of the state to resume the use of said creek at any time without making compensation."

It is not apparent that this section conferred any benefit upon the company, as it had the right to build the bridge, and the Oneida Lake Canal at this place had in fact been abandoned for practical purposes some years before. I do not consider, therefore, that the words "subject however to the right of the state to resume the use of the said creek at any time without making compensation" refer particularly to the building of the bridge mentioned in that statute; for, as stated, no authority to build the bridge was needed. The statute merely recites the fact that the canal has been abandoned, but that the state may nevertheless resume the use of the creek. But if we read the statute otherwise, and treat the consent to construct the bridge as a conditional one, the construction through the creek of the barge canal of a much greater width than the former canal, requiring 15½ feet in the clear between high water and the bridge, is not a resumption of the use of the creek within the meaning of the statute. It is practically an appropriation of the creek for a different use. It could not have been contemplated by the state or the company, at the time the statute was passed, that not only the defendant's bridge, but the approaches to it for a considerable distance upon either side of the creek, were to be rendered valueless by so unusual a public improvement in the future. The canal improvement act (chapter 147, p. 332, Laws 1903) contemplated full compensation to all parties whose property rights were injured by the canal to be built thereunder, and in section 3 we find the provision:

"New bridges shall be built over the canals to take the place of existing bridges wherever required or rendered necessary by the new location of the

canal. All fixed bridges and lift bridges when raised shall give a clear passageway of not less than 15½ feet between the bridge and the water at its highest navigable stage."

The provisions of the statute referring to the construction of defendant's bridge in no way deprive it of any benefits to which it might otherwise be entitled under the above provision. The evidence of the Attorney General, who was one of the canal board approving of the settlement made, shows that it was not considered certain that the state was required to build a new bridge for the defendant, or that the act authorizing the construction of the defendant's bridge entitled it to the benefit of this provision with reference to the construction of new bridges. It cannot be said with certainty that the state was not obliged to replace the bridge in question. The whole facts were up for consideration, the agreement for such compensation was made understandingly and in good faith, the defendant has acted upon it, the money has been paid and the bridge and its approaches rebuilt, and the state cannot now be heard to question the validity of such adjustment. It does not appear that the interests of the state were not fully protected in the adjustment.

The judgment should therefore be affirmed, with costs. All concur.