LEHIGH VALLEY R. CO. v. CANAL BOARD et al.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. NAVIGABLE WATERS (§ 20*)—OBSTRUCTIONS—RAILROAD BRIDGES.

Railroad Law (Laws 1850, c. 140) § 28, gives every corporation formed under the act power to construct its road across or upon any stream of water or water course which the route of its road shall touch providing it restores the stream to its former state, or to such state as shall not unnecessarily impair its usefulness, but provides that nothing in the act shall authorize the erection of any bridge or obstruction across any stream navigated by steam or sail boats at the place of the bridge or obstruction. Plaintiff's railroad bridge was only one of many bridges which obstructed a stream which was originally navigable, but which, independent of plaintiff's acts, had wholly ceased to be used by, and became nonnavigable for, steam or sail boats. *Held*, that the statute did not prevent the construction of the bridge across the stream.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73-79; Dec. Dig. § 20.*]

2. NAVIGABLE WATERS (§ 20*)—OBSTRUCTIONS—RAILROAD BRIDGES.

A river which was in fact navigable before it was obstructed by railroad bridges and other causes so that navigation practically ceased did not thereby lose its navigable character, and the Legislature could thereafter, to increase its navigability, cause such obstructions, including a railroad bridge, to be removed at the cost of the owners or require them at their own cost to reconstruct them so as not to interfere with navigation, and the use of the river for the construction of a barge canal pursuant to statute was for the purpose of increasing its navigability so as to authorize the removal of an obstructing bridge at the owner's expense.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73-79; Dec. Dig. § 20.*]

3. CANALS (§ 17*)—BRIDGES—OBSTRUCTING NAVIGATION—EXPENSE OF REMOVAL.

Barge Canal Act (Laws 1903, c. 147) §§ 1, 2, relate to the issuance of bonds to improve the Erie and other canals, and section 3 requires the state engineer and superintendent of public works to improve such canals, and provides the dimensions of the canal in rivers and lakes and for the construction of locks, dams, etc., and that new bridges shall be built over the canals to replace existing bridges whenever required by the new locations. Section 5a, added by Laws 1909, c. 180, provides that where bridges have been erected across canals to be abandoned as provided therein, and the state has made compensation to the owners for the expense of constructing bridges for their use in crossing the new route of the canal provided, those parts of the abandoned canals over which such bridges extend shall not be sold, and the owner shall not cross such abandoned canals by structures until equitable compensation is paid into the state treasury, and that similar payments shall be required to permit any persons to cross the beds of navigable streams. The canal barge act as originally introduced in the Legislature provided in section 3 that "new" highway bridges should be built over canals to replace existing bridges when rendered necessary by the new location, but the quoted word was stricken before final enactment. The state engineer stated, in reply to a question by the Legislature when it was investigating the cost of the canal, that his estimate included all necessary bridges over it. and that 27 railroad bridges would be required. *Held*, that the. act did not impose the cost of removing a railroad bridge spanning a river, made a part of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Erie canal, upon the railroad company without compensation being made to it, the act contemplating that the state should pay for the removal of such bridges made necessary by the canal.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 17.*]

4. STATES (§ 119*)—LOANING STATE'S MONEY.

A statute appropriating money of the state to build a new bridge for a railroad company to replace one necessary to be removed in the construction of a canal under the barge canal act would not contravene Const. art. 8, § 9, providing that the money of the state shall not be given or loaned in aid of any corporation or private undertaking.

[Ed. Note.—For other cases, see States, Cent. Dig. § 118; Dec. Dig. § 119.*]

Spring and Kruse, JJ., dissenting.

Appeal from Trial Term, Cayuga County.

Suit by the Lehigh Valley Railroad Company against the Canal Board and others to enjoin defendants from interfering with a railroad bridge across the Seneca river near Weedsport, N. Y., without making compensation. From a decree of the Trial Term for plaintiff (69 Misc. Rep. 251, 125 N. Y. Supp. 227), defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward J. Mone, Deputy Atty. Gen., for appellants.
Frank H. Platt, for respondent.

McLENNAN, P. J. The Southern Central Railroad Company was incorporated in the year 1865 under and pursuant to the provisions of the general railroad law, being chapter 140 of the Laws of 1850, for the purpose of constructing and operating a railroad from Sayre, in the state of Pennsylvania, to North Fair Haven, in the state of New York. As required by section 22 of the railroad law, said company filed in the Cayuga county clerk's office the profile and maps of its proposed railroad, showing its location in said county, which included crossing the Seneca river at a point in said county about seven miles west of Jack's Reef and fifteen miles east of the mouth of the Clyde river. Thereafter, in the year 1871, said company, claiming to act under the authority conferred by the railroad law and with the consent or acquiescence of the state authorities, constructed a wooden fixed bridge across said river at the point in question, and as shown upon the maps and profile filed by it as aforesaid. When completed, said bridge was used as a part of said company's railroad, and it continued to use the same and to maintain its tracks thereon until the year 1888, when it was replaced by an iron truss bridge, which is the subject of this litigation. Such new bridge, which is commonly known as the Weedsport bridge, is a three-span iron structure, about 342 feet in length, resting upon two stone abutments, one upon each bank of the river, upon land which said company had acquired and owned in fee simple; also upon two piers placed in the bed of the river at a distance from each other of the length of the middle span of the bridge. Such bridge has a clearance above the ordinary height of the water in the river of 7.7 feet. Approaches to said bridge upon either side-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

of the river were constructed by the company upon lands acquired and owned by it. Thereafter such bridge and approaches constituted part of said company's line of railroad, and ever since its construction has been maintained and operated by it or its successors in interest, all with the acquiescence of or without objection by the state officials. In 1895, by foreclosure and reorganization proceedings duly had, all of the railroad property, rights, privileges, and franchises of the Southern Central Railroad Company were conveyed to Lehigh & New York Railroad Company, which has since been the owner thereof. In the year 1895 all of said railroad property, rights, privileges, and franchises were duly leased by said Lehigh & New York Railroad Company for a term of 999 years to the plaintiff, the Lehigh Valley Railroad Company, a foreign corporation, duly created under the laws of the state of Pennsylvania, and which company prior to the commencement of this action filed the certificate required by law to enable it to carry on its business in this state. Prior to the passage of the barge canal act, so called, being chapter 147 of the Laws of 1903, which authorizes the construction by the state of the barge canal, no question was raised as to the right of plaintiff's predecessors in interest to construct the bridges in question in the manner in which they were constructed or as to the maintenance and operation of the railroad in question over and across the same.

Said barge canal act provides, among other things, in substance, that the Seneca river at the point in question shall become and form a part of such barge canal. Section 3 of the act provides:

"New bridges shall be built over the canal to take the place of existing bridges whenever required or rendered necessary by the new location of the canal. All fixed bridges and lift bridges when raised shall give a clear passageway of not less than 15½ feet between the bridge and the water at its highest navigable stage."

In order to construct the barge canal as contemplated by the act, not only must the bridge across the river have "a clear passageway of not less than 15½ feet between the bridge and the water at its highest navigable stage," being eight feet higher than the present structure, but the piers in the bed of the river which support the existing bridge must be removed. Indeed, it is practically conceded that, in order to accommodate the construction of the barge canal as contemplated, a new bridge will be required, involving a cost or expenditure of at least $100,000.

The learned Deputy Attorney General contends that the cost of removing the present structure or of reconstructing it in such manner as to comply with the requirements of the barge canal act must be borne entirely by the plaintiff if it is to continue to maintain its railroad across the Seneca river. Such contention was adopted by the defendants, the state officials, and before the commencement of this action, without making or offering to make any compensation to the plaintiff for the interference with or destruction of its bridge, made necessary by the improvement of the Erie Canal, they requested and directed the plaintiff to raise said bridge and said approaches thereto, and, plaintiff having refused to comply with said request and direc-

tion, the defendants threatened to enter upon said bridge, and to alter, change, and raise the same. Thereupon this action was commenced to restrain the defendants from carrying out such threat or intention.

Defendants' contention in the premises is sought to be sustained, first, upon the ground that by the incorporation of the Southern Central Railroad Company under chapter 140 of the Laws of 1850, or because of any acts done in compliance with the provisions of the said act, it did not acquire any right or license to construct the bridge in question. In effect, that the Seneca river being a navigable stream, the act of 1850 did not authorize said company to in any manner obstruct the same, and that it in erecting said bridge and the plaintiff in operating its railroad thereon were trespassers upon the property and rights of the state, and that, therefore, it was within the power of the state to at any time cause the removal of such obstruction, and to compel the discontinuance of such trespass. It is not claimed by the respondent that any statute existed authorizing the construction of the bridge in question and its use by the plaintiff other that is found in section 28 of the railroad law of 1850. That act provides as follows:

"Every corporation formed under this act, shall, * * * have power (5) to construct their road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike or canal which the route of its road shall intersect or touch; but the company shall restore the stream or water course, street, highway, plank road and turnpike thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness. Every company formed under this act, shall be subject to the power vested in the canal commissioners by the seventeenth section of chapter 276 of the Session Laws of 1834. Nothing in this act contained shall be construed to authorize the erection of any bridge, or any other obstructions across, in or over any stream or lake navigated by steam or sail boats, at the place where any bridge or other obstructions may be proposed to be placed. * * *"

The learned trial court has found, the correctness of which finding is amply supported by the evidence, that the Seneca river is a navigable stream, and that its bed is owned by the state. It was so navigable from the earliest history of the state to 1871, when the first bridge in question was constructed, and it has ever since continued to retain that character. Indeed, in the early times and before the construction of the Erie Canal it was a part of the principal highway of commerce. After the construction of the Erie Canal and under the conditions as they existed in 1871 for a long time previous thereto and ever since, the commerce upon such river has dwindled and practically ceased to exist. After the Erie Canal was built, whatever traffic had theretofore been carried on on the river was transferred to the canal, which furnished a more convenient means of transportation, and with the consent or acquiescence of the state authorities highway bridges and other structures were constructed across the river both above and below the point at which the plaintiff's bridge was located which effectively prohibited its navigation. The plaintiff's bridge was only one of many structures and obstructions which brought about such result.

Such being the condition of the river as to navigability in 1871 and in 1865, when the Southern Central Railroad Company was incorporated, we think the fair meaning and true interpretation of the railroad law of 1850 authorized such railroad company to construct its railroad across said river upon the bridge erected by it. As we have seen, by the express language of the statute, such company was authorized "to construct their road across, along, or upon any stream of water" or "water course." The words used, "any stream of water" or "water course," must have referred to a navigable stream or water course; else such words are meaningless, because the state had no control or authority over any private "stream of water" or "water course." A railroad might be constructed across or over them with the consent of the owner and wholly independent of the consent of the state either by statute or otherwise. So that the meaning of the statute is that a railroad company was authorized to construct its railroad upon any navigable "stream of water or water course which the route of its road" intersected or touched; "but the company shall restore the stream or water course, * * * thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness."

The construction of the bridge in question and the operation of plaintiff's railroad over the same in no manner interfered with the usefulness of Seneca river as a navigable waterway, for the reason that during that entire period, and wholly independent of any acts committed by the plaintiff or its predecessors, such river was nonnavigable for all practical purposes. It would be an unreasonable interpretation of the statute to hold that a railroad company was prohibited from crossing a stream or water course, although at one time navigable, but which because of the changed conditions had been abandoned, and with the consent and acquiescence of the state, its navigation made impossible.

The part of the act of 1850 last above quoted does not aid the defendants in the contention that the plaintiff's predecessor was a trespasser in erecting the bridge in question, or that the operation of plaintiff's railroad over the same was unlawful, because it cannot be claimed upon the evidence that at any time from a period many years prior to 1871 to the present time Seneca river at the place in question has been navigable by steam or sail boats, and so wholly independent of the obstruction caused by the erection of the bridge in question.

[1] We conclude that such bridge was a lawful structure; that its erection and use as a part of the plaintiff's railroad was authorized by the provisions of the act of 1850.

[2] Second. It is urged by the appellants' counsel that in any event, the Seneca river being a navigable stream, it did not lose its navigable character because of any obstructions which were permitted to exist therein or over the same, and that it was at all times competent for the Legislature to improve and increase its navigability and when necessary for that purpose to remove or cause to be removed all obstructions therein or over the same, including the bridge in question, at the cost and expense of the owners thereof, including the plaintiff,

or to require all such bridges to be reconstructed in such manner as not to interfere with the navigability of such river as so improved and increased at the cost and expense of their respective owners. We think the position thus taken by the appellants' counsel is correct, and is amply supported by authority. In the case of Slingerland v. Int. Contracting Co., 169 N. Y. 60, at page 70, 61 N. E. 995, at page 997, 56 L. R. A. 494, the court said:

"The doctrine must be regarded as settled that whatever the rights of the owners of lands bordering upon, or within the waters of, a navigable river, they must yield whenever the powers of government are called into existence for a general public benefit in the improvement of navigation, and this is, of course, true whether the power be exercised by the federal or the state government. Loss may result to the individual; but he is remediless at law. He can have no private rights in the river, which are exempt from the requirements of a public or governmental necessity"—citing Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592.

As stated by the learned Deputy Attorney General in his brief, it has been held in numerous cases that all grants of land and of franchises or licenses of the character in question are made subject to an easement or right reserved to do whatever is reasonably necessary to preserve or promote the public right of navigation. This right or easement, according to the authorities, is vested in both the federal and state governments. Northern Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; West Chicago St. R. R. Co. v. Chicago, 201 U. S. 506, 26 Sup. Ct. 518, 50 L. Ed. 845; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523. The same doctrine has been held by the courts of this state. In the case of City of Buffalo v. D., L. & W. R. R. Co., 136 App. Div. 274, 120 N. Y. Supp. 1081, which was an action brought by the city of Buffalo to compel the defendant to change its fixed bridge across the Buffalo river to a drawbridge, in order to increase the navigability of such river, Mr. Justice Kruse, speaking for the court, said:

"I am of the opinion that the company did not acquire the right under its grant or franchises from the city to perpetually maintain a fixed bridge over the river, regardless of the requirements of the public use of the river as a highway and waterway for commerce and navigation. I think the Legislature neither intended to delegate to the city, nor has the city assumed to grant, the right to the railroad company, absolutely and perpetually, to maintain a fixed bridge over the river; but that such right was upon the implied condition that the company might build its bridge over the stream, subject to the future as well as to the then requirements of the public use, and that there remained in the state the right to improve the stream, make it more serviceable as a public highway, and increase its navigability as an avenue of commerce and navigation, and that the railroad company took its right subject thereto, and is required to meet all reasonable requirements of the state, from time to time, as the conditions change and public use of the river increases."

And it was held that the railroad company might be required to make the proposed alteration without compensation and without invading any of the rights granted to the defendant by the Constitution. Interborough Rapid Transit Co. v. Gallagher, 96 App. Div. 632, 89 N. Y. Supp. 152; Brooklyn Elevated Railway Co. v. Brooklyn, 2 App. Div. 98, 37 N. Y. Supp. 560.

It must be conceded that the use of the Seneca river for the construction of the barge canal is for the purpose of increasing the navigability of such stream. The bridge in question when constructed being a lawful structure, because at the time it did not unnecessarily interfere with the navigability of the Seneca river and because constructed pursuant to a franchise granted under the railroad law (Act of 1850), it was not competent for any state official to remove or cause the same to be removed except by the authority of an act of the Legislature enacted for the purpose of improving or increasing the navigability of such river. It would seem to follow that the defendants must find authority in the barge canal act, so called, for compelling plaintiff to remove its bridge from the Seneca river and to construct another at its own expense some eight feet higher above the water if it is to continue to operate its railroad at this point. Such act does not in express terms direct railroad companies or other owners of existing bridges on the line of the barge canal to change their bridges at their own expense or authorize any state officer to direct them so to do.

[3] The appellants, however, contend that that is the fair meaning and intent of the act. It would seem that, if it had been the intent of the Legislature to impose upon railroad companies an expenditure of several millions of dollars in changing their bridges, it would have said so in words which would not leave such an intention open to doubt. Sections 1 and 2 of the barge canal act relate to the issue and sale of bonds "for the purpose of improving the Erie Canal, the Oswego Canal and the Champlain Canal, and the procurement of lands required in connection therewith." Section 3 of the act sets forth at length and with particularity the improvement to be made and how and by whom it is to be made. It provides that:

"Within three months after issuing said bonds or some part thereof the superintendent of public works and the state engineer are hereby directed to proceed to improve the Erie Canal, the Oswego Canal and the Champlain Canal in the manner hereinbefore provided."

The routes of the canals are laid out. The section then specifies the size and dimensions of the canal prisms, the minimum depth and width of construction in rivers and lakes, the construction of locks, spillways, culverts, steam crossings, stop-gates, guard-gates, and material for the construction of dams, etc., and there can be no suggestion that all of such work specified in section 3 should be done otherwise than solely at the expense of the state. Inserted among those various other details of construction, all to be done at the expense of the state, is the following:

"New bridges shall be built over the canals to take the place of existing bridges whenever required or rendered necessary by the new location of the canals."

A reading of section 3 of the act clearly indicates that no distinction is made in the building of new bridges over the canals to take the place of existing bridges and other work specified in said section. It is an admitted fact that the state was and is building at its own expense many new highway bridges where required and rendered nec-

essary by the new location of the canals.    Such bridges, among others, included one over the Oneida river, a number over Fish creek, and a number over the Seneca river, including among the bridges over the Seneca river the Mosquito Point bridge, the Weedsport Highway bridge, the Bonta bridge, and the iron bridge which had replaced the old float bridge a mile up the river from ·Cross Lake, and yet, concededly, such highway bridges are in exactly the same situation, so far as the act is concerned, as are the railroad bridges.    Indeed, the bill which eventually became the barge canal act, as originally introduced both in the Senate and the Assembly, contained the word "highway" before the word "bridges" in the sentence in question. That word, "highway," was stricken out before the final enactment of the bill, thus leaving all bridges required to be replaced or reconstructed in precisely the same situation.

We think it clearly inferable that the word "highway" was stricken out in the amendment referred to for the very purpose of avoiding the implication that railroad bridges were intended· to be excluded from the protection of the act.

Section 5a, added to the barge canal act by chapter 180 of the Laws of 1909, is important as bearing upon the true interpretation of that part of section 3 relating to bridges to which attention has been called:

"Sec. 5a. Where bridges have heretofore been erected by any person or corporation across canals to be abandoned as herein provided, and where the state shall have made compensation to them on account of the expense of constructing bridges for their use in crossing the new routes provided for in this act, those portions of such abandoned canals over which such bridges extend shall not be sold, nor shall it be lawful for such persons or corporations, or their successors, grantees or assigns, to cross such abandoned canals by structures at grade or on embankments until such compensation as the canal board shall deem equitable shall be paid into the state treasury by the persons or corporations to whom the state has made compensation as aforesaid, or by their successors, grantees or assigns. In like cases similar payments shall be required before it shall be lawful for any person or corporation to cross the beds of navigable streams or of streams the property of the people of this state, by structures at grade or on embankments. Any moneys so paid into the state treasury shall be applied as provided in section 5 of this act."

This provision specifically refers to compensation to be made to any "person or corporation  *  *  *·  on account of the expense of constructing bridges for their use in crossing the new routes provided for in this act."

Applying the provisions of that section to the conditions here present, it will be noted that the railroad of this plaintiff crosses the old canal near Weedsport.    The old canal at this point will be abandoned. The plaintiff's railroad also crosses the "new route" in the Seneca river.    It would seem that section 5a clearly contemplates that such a corporation as the plaintiff shall receive compensation "on account of the expense of constructing" a new bridge for its use in crossing the new route.·

It also appears, and it seems to me very important as bearing upon the intent of the Legislature when the section quoted relating to bridges was passed, that under the authority of the Legislature the

state engineer was directed to and did make an examination and survey of the proposed barge canal, its character, its cost, etc., and, among other things, he reported, in substance, that it would cost upwards of $3,000,000 to reconstruct the existing railroad bridges in such manner as to accommodate the barge canal, and finally the appropriation for the construction of the barge canal was increased to an amount which included the cost of such bridges as reported by the state engineer and other expenses which had not been included in his first or original report. Indeed, when the Legislature was seeking for information from the engineer as to the entire cost of the canal, this specific question was asked in a resolution passed by the Assembly, "Are all necessary bridges over the proposed canal provided for?" and the state engineer in a written report dated on the 2d day of March, 1903, answered said question in the affirmative. The further question was asked by the Assembly in such resolution: "How many of each kind of bridges will be required?" The state engineer replied in the same report that 27 railroad bridges would be required. That is exactly the same number mentioned in the bond report of 1901, among which plaintiff's railroad bridge across the river was specifically named by him.

The investigation made by the Legislature through the state engineer, the information which the engineer gave to the Legislature in respect to the cost of the bridges of the character of the plaintiff's, and then the passage by the Legislature of the barge canal act which provided for all such estimates of cost, it seems to me unmistakably indicates that it was the intent of the Legislature to provide that the state should pay for the erection or reconstruction of bridges of railroad companies made necessary by the construction of the barge canal. That it was the intention to make an appropriation sufficient to cover the cost of making the necessary changes in the railroad bridges is demonstrated by the action which the Legislature took upon the receipt of the engineer's report. Not only was the word "highway" stricken out from the provision in regard to new bridges, so that the provision was made to apply not only to highway bridges but to all bridges, but the amount of the appropriation was increased so that it would be sufficient to cover the cost of the changes in the railroad bridges as estimated by the state engineer. As bearing upon the intent of the Legislature in using the language which it did in section 3 of the barge canal act, above quoted, the opinions of the courts in the following cases are instructive: People v. N. Y., Ontario & Western R. R. Co., 133 App. Div. 476, 117 N. Y. Supp. 1048; Fulton Light, Heat & Power Co. v. State, 200 N. Y. 400, 94 N. E. 199, opinion of Court of Claims in same case, 62 Misc. Rep. 189, 116 N. Y. Supp. 1000.

[4] It is contended that the appropriation of money by the state to build a new bridge for plaintiff's railroad would violate section 9 of article 8 of the Constitution, which provides:

"Neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation or private undertaking."

We think the constitutional prohibition does not apply. Trustees v. Roome, 93 N. Y. 313, 45 Am. Rep. 217; Matter of Boston & Albany R. R. Co., 64 App. Div. 257, 72 N. Y. Supp. 32, affirmed without opinion 170 N. Y. 619, 63 N. E. 1115; Fulton Light, Heat & Power Co. v. State, supra.

Having reached the conclusion that it was the intent of the Legislature in passing the barge canal act to provide that the railroads required to change their bridges to accommodate such canal should be reimbursed by the state for such cost and expense, it is unnecessary to consider the constitutional question raised by the respondent's counsel. The judgment and order appealed from should be affirmed, with costs.

Judgment affirmed, with costs.

WILLIAMS and ROBSON, JJ., concur.

KRUSE, J. (dissenting). The real question here is whether the state or the plaintiff railroad company shall bear the expense of rebuilding the railroad bridge over the Seneca river to meet the requirements of the barge canal improvement. We are all agreed, as I understand it, that the state could require the railroad company to bear that burden, but divided upon the question as to whether the state, by appropriate legislation, has relieved the plaintiff therefrom and itself assumed that expense.

The state never parted with its title to the bed of the stream, and it now is the owner thereof, and the trial court so decided. The state gave to the plaintiff's predecessor in title permission to bridge and carry its railroad over the river. The permission was given without compensation to the state, and the trial court specifically found that the plaintiff or its predecessors in title acquired only a revocable license to cross the Seneca river at said point, or to place its piers or abutments in the waters thereof.

I cannot bring myself to the conclusion that the Legislature has assumed for the state the burden which legally and equitably belongs to the railroad company, even if the Legislature could do that and keep within the bounds of the Constitution. If the Legislature has the power to assume that burden for the state, that intention should be expressed in clear and explicit language, which, as I think, has not been done in any of the acts of the Legislature referred to in the prevailing opinion. A logical result of such a policy upon the part of the state is to make the rights of the railroad company having a mere revocable license paramount to those of the state in its own property. I think such a rule ought not to prevail, and, in the absence of any express declaration by the Legislature to that effect, that we should not so hold. If the railroad company desires to continue to cross this stream, the title to the bed of which is in the state, it should accommodate itself to the reasonable requirements of the state in improving the river for public use.

SPRING, J., concurs with KRUSE, J.