## THE DELAWARE AND HUDSON COMPANY *v.* THE STATE OF NEW YORK.

(Court of Claims, January, 1919.)

**Bridges — when state liable for the reconstruction of, crossing the Mohawk river at Waterford and Schenectady — Barge Canal Act, Laws of 1903, chap. 147.**

Where, pursuant to the orders and under the direction of the superintendent of public works, the claimant relocated and reconstructed at its own cost and expense its bridges crossing the Mohawk river at Waterford and Schenectady, in accordance with the plans furnished by the state engineer, so as to conform to the requirements of the barge canal, the fact that the state did not appropriate said bridges by the filing and service of maps and otherwise in accordance with the procedure laid down in the Barge Canal Act (Laws of 1903, chap. 147) did not relieve the state from liability to reimburse the claimant for its expenses incurred in carrying out the directions of the state officials who were charged with the duty of building the canal.

Ackerson, P. J., dissents.

CLAIM to recover the cost paid by the Delaware and Hudson Company for reconstruction of its bridges crossing the Mohawk river at Waterford, No. 14,398, and Schenectady, No. 14,400.

Lewis E. Carr, for claimant.

Merton E. Lewis, attorney-general; Carey D. Davie, deputy attorney-general, for state of New York.

WEBB, J.   In the early legal history of the barge canal, the appellate courts decided that the act authorizing that improvement (Laws of 1903, chap. 147) put upon the state the expense of reimbursing the railroads

which reconstructed their bridges to conform to the requirements of the new canal. *Lehigh Valley R. R. Co.* v. *Canal Board,* 146 App. Div. 151, affd., 204 N. Y. 471.

They also held that "the bridge includes the approaches thereto for a reasonable distance to enable the trains to reach the elevation of the new structure." 204 N. Y. 477.

In the present cases the claims were filed by the above claimant to recover the cost paid by it for reconstructing its bridges crossing the Mohawk river at Waterford (No. 14398) and Schenectady (No. 14400). The work was performed by the company upon the plans furnished by the state engineer, pursuant to the orders and under the direction of the superintendent of public works, and claims for the cost were duly filed in this court.

The fact that the state did not appropriate these bridges by the filing and service of maps and otherwise in accordance with the procedure laid down in the Barge Canal Act, did not relieve it from its liability to pay the expense of relocating and reconstructing the bridges. The then existing bridges had existed at their respective locations for more than a half century and were there legally. In the work of canalizing the Mohawk, essential changes were required and the state directed the company to make them. Had the state appropriated the bridges including the approaches under barge canal procedure and itself undertaken the work of their reconstruction, the method of performing and paying for the work would necessarily have been that prescribed by the Barge Canal Act. But the state elected to require the company to do the work — just as it has uniformly done in the cases of other railroad and electric companies, and thereby became liable to reimburse the owners for

the expenses incurred in carrying out the directions of the state officials who were charged with the duty of building the canal.

This is precisely in accordance with the law as laid down in the *Lehigh Valley Railroad* case and that case controls our decision.

PARIS, J., concurs.

ACKERSON, P. J. (dissenting).* The claim is similar in character to the claim of the same claimant, No. 14400, and is for the recovery of the amount expended by claimant in connection with the work of constructing a new bridge over the canalized Mohawk river within the village of Waterford.

The majority of the members of the court sitting in this case have awarded judgment in favor of the claimant for the sum of $121,557.91 with interest as in the findings directed.

Among the items going to make up the amount for which judgment has been awarded are payments made by the claimant company to property owners in the village of Waterford for damages arising from the change of the grade of the claimants railroad at and near the approaches to the bridge in question claimed to have been made necessary by the raised elevation of the bridge, payment to the village of Waterford to reimburse it for disbursements made for legal advice, etc., and an item for the claimant's expense in procuring the services of an expert witness, amounting in the aggregate to $39,658.39 as set forth in the ninth finding of fact and the fifth conclusion of law.

For the reasons set forth in the dissenting opinion in the claim of this claimant No. 14400, I must dissent

* Claim No. 14,398, Waterford bridge.

from this award in its entirety. If I am right in the conclusion which I have reached in that case, this claim is without foundation and should be dismissed.

In any event, though the conclusion which my learned associates have reached that the claimant is entitled to be compensated for the cost of the bridge and its approaches be sustained, there is in my judgment no foundation for that part of the claim which has been sustained by the ninth finding of fact and the fifth conclusion of law.

With regard to this branch of the case, it appears that before proceeding with the work of the construction of the bridge and its approaches claimant applied to the village of Waterford for permission to change its grade in one of the village streets and such permission was granted upon the agreement in writing on the part of the claimant whereby claimant assumed the payment of all damages occasioned to property owners in consequence of the change of the grade of the street and indemnified the village against all claims for damages so occasioned.

It has been found that the amount of payments made by the claimant pursuant to such agreement was $39,133.39 and that in addition thereto the claimant has paid the village of Waterford $500, the amount of its legal expenses with respect to the matter, and that the claimant has also expended the sum of $25 for the services of an expert witness, aggregating as above stated $39,658.39.

If this work had been done by the state, as contemplated and commanded by the Barge Canal Act, none of these expenditures would have been incurred by the state. Property owners abutting on Second street in the village of Waterford would have had no valid claim against the state for damages caused by change of grade because the sole burden assumed by the state

Court of Claims, January, 1919. [Vol. 106.

with respect to such bridges by the Barge Canal Act was to raise the old bridges or, where necessary, to construct new bridges and the approaches thereto. It is true that by chapter 612 of the Laws of 1918, which became a law on May 11, 1918, the obligation to pay damages so arising was imposed upon or assumed by the state, but the work here in question was performed, and this claim was filed, tried and submitted, long before the enactment of that statute, which requires that a claim for damages under it, which arose prior to its enactment, should be filed within one year *after* the passage of the act. It was because under previously existing law no valid claim for damages arising out of the change of grades of streets and highways occasioned by raising of the levels of canal bridges existed (*Warner* v. *State of New York,* 132 App. Div. 611; affd., 204 N. Y. 682) that the enactment of chapter 612 of the Laws of 1918 was made necessary. In the case at bar the liability of the railroad company to pay these damages did not exist by obligation of law but was created by the agreement of the railroad company with the village of Waterford. The raising of the Waterford bridge and the consequent change of grade of Second street having been because of the command of governmental authority, namely the Barge Canal Act, and not having been for the benefit or convenience of the railroad company or upon its initiative, there was no liability on the part of the railroad company to respond in damages to the property owners because of the change of grade *without the agreement between the company and the village of Waterford. Rigney* v. *N. Y. C. & H. R. R. R. Co.,* 217 N. Y. 31. Had the state undertaken the performance of this work pursuant to the provisions of the Barge Canal Act, the village of Waterford would not have been able to forbid or to

interfere with it because the village of Waterford is only a member of the state, existing for the sole and only purpose of performing such governmental functions as may be assigned to it by the state acting through the legislature and has no standing or status whereby it may interfere with or direct or impose conditions upon the state as to the manner in which the state shall administer its governmental functions. *Markey* v. *Queens County,* 154 N. Y. 675; *County of Albany* v. *Hooker,* 204 id. 1; *Laramie County* v. *Albany County,* 92 U. S. 307.

For these reasons it seems clear that judgment for claimant for the amount of the items herein considered is unwarranted.

Claim allowed.

Ackerson, P. J. (dissenting).* The claimant in this case is a domestic corporation having the rights, powers and privileges of railroad corporations under the general railroad law of the state. It is, and since May, 1871, has been, in the possession of and operating the railroad of the Rensselaer and Saratoga Railroad Company under a lease thereof in perpetuity. The Rensselaer and Saratoga Railroad Company was incorporated by chapter 131 of the Laws of 1832, and under that act and acts amendatory thereof it constructed its railroad from the city of Troy to Ballston Spa. Such railroad crosses one of the channels of the Mohawk river at a short distance below the city of Schenectady, N. Y., and prior to the time of the commencement of barge canal construction it was carried over such river upon a single track railroad bridge consisting of five decked latticed truss spans sup-

* Claim No. 14,400, Schenectady bridge.

ported by abutments at each end and four piers in the river. The clearance between the bottom of the bridge and the water in the river was twelve and one-half feet. Without question the railroad company was duly authorized by law to cross said river with its railroad by means of such a bridge. By virtue of the provisions of chapter 147 of the Laws of 1903 that portion of the Mohawk river passing under the aforesaid railroad bridge was incorporated into and made a part of the new barge canal authorized by such act. Section 3 of said act provided in relation to bridges as follows: '' New bridges shall be built over the canal to take the place of existing bridges wherever required, or rendered necessary by the new location of the canal. All fixed bridges and lift bridges when raised shall give a clear passageway of not less than 15½ feet between the bridge and the water at its highest ordinary navigable stage.''

Claimant's bridge did not conform to this requirement because as is seen above it did not afford the statutory clearance.

To conform such bridge to barge canal requirements it was necessary for the entire bridge to be raised three feet and that piers in the river obstructing navigation as proposed should be removed.

On or about October 4, 1910, claimant was served with a notice on the part of the officers of the state directing claimant to alter its existing structure to meet barge canal navigation requirements and claimant thereafter proceeded to prepare plans for a structure to carry its railroad over the river in such a manner as not to interfere with navigation upon the barge canal when completed.

The plans prepared by claimant called for a new double track bridge spanning the river and a new structure was built by the claimant in conformity with

such plans, the cost of which, as found by the majority of the court, amounted to the sum of $250,000, the entire expense having been paid by claimant.

Claimant claims that of the amount so expended in the construction of this new bridge $89,506.94 is properly chargeable to the state because it would have been necessary to expend that amount in elevating its old bridge and making such other changes in the old structure as to conform it to barge canal requirements, and this claim has been filed to recover that amount from the state.

The majority of the members of the court sitting in this case have approved this claim of claimant and have awarded judgment for the sum of $89,506.94 with interest thereon from May 13, 1916, the date when the claim was filed, and in support of said judgment has found among other things its finding of fact: " 6. The portion of the expenditures of the claimant in constructing said new bridge, chargeable to the requirements of the State to conform its bridge to barge canal requirements, was $89,506.94, which expenditures were necessary and reasonable in amount," and as conclusions of law: " 5. The method adopted in ascertaining the amount the State was chargeable with in connection with its requirements as to the bridge of the claimant was a proper one and the amount so ascertained and heretofore found is reasonable," and " 7. The claimant is entitled to recover from the state for these expenditures in conforming its bridges over the Mohawk river at Schenectady to the requirements of the state for barge canal purposes $89,506.94 with interest thereon from May 13, 1916, the date when this claim was filed as hereinbefore found."

I am not able to concur in the finding of fact and conclusions of law above quoted nor in the award, and therefore dissent therefrom, for the reason that in

my judgment the award is not authorized by law. It is conceded that there was and is no obligation resting upon the state to defray any part of the expense of conforming claimant's railroad bridge to barge canal requirements, except such as was voluntarily assumed by the state by the enactment of section 3 of the Barge Canal Act. *Lehigh Valley R. Co.* v. *Canal Board,* 146 App. Div. 151; 204 N. Y. 471. We must, therefore, look to the statute alone to find the limits of the liability of the state and justification for the award.

Looking then, to chapter 147 of the Laws of 1903 we find in section 3 thereof that the work of barge canal construction is to be done by *the superintendent of public works and the state engineer in the manner hereinbelow provided,* among which provisions, in the same section of the act, is the following, viz.: " New bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals. All fixed bridges and lift bridges when raised shall give a clear passage way of not less than fifteen and one-half feet between the bridge and the water at its highest ordinary navigable stage."

It should be noted in passing that section 3 of the Barge Canal Act provides generally for the entire work of canal construction, route, division, spillways, culverts, guard gates, bridges, dams, buoys, locks, feeders, outlets, etc., and makes no distinction between the kind of work entering into the construction as a whole. Section 4 of the act provides for a formal procedure to be taken for the appropriation of lands, structures, and waters, and for the payment therefor, but it is not pretended that any of the formal steps of that procedure have been taken to extinguish any title of the claimant to lands, structures, waters, franchises, rights

or easements, or that any formal appropriation has been made with respect to the bridge in question.

Section 6 of the act provides that *all the work* authorized to be done by the act shall be done by contract and that before any such contract shall be made the state engineer shall make maps, plans, and specifications for the work to be done and material furnished and shall ascertain with all practicable accuracy the quantity of embankment, excavation and masonry and quantity and quality of all materials to be used and *all other items of work to be placed under contract* and make a detailed estimate of the cost of the same, which maps, plans and specifications it provides must be adopted by the canal board and filed in the office of the superintendent of public works and publicly exhibited to every person proposing or desiring to make a proposal for such work.

The section also provides that no alteration shall be made in any such map, plan or specification *or the plan of any work under contract during its progress except with the consent and approval of the superintendent of public works and the state engineer, and contains certain other protective provisions.*

Section 7 of the act provides that all the work herein specified shall be done by contract executed in triplicate *and entered into by the superintendent of public works on the part of the state after having been advertised once a week for four successive weeks in two newspapers published in the city of New York,* etc.; that proposals shall be publicly opened and read; that each proposal must be accompanied by a money deposit in the form of a draft or certified check upon some good banking institution for five per centum of the amount of the proposal as security or as assurance to the state of good faith of the proposal; that no contract which exceeds by more than ten per centum the gross cost

of the work as estimated by the state engineer or by more than twenty per centum in the case of any item therein shall be awarded unless such award shall be approved by the state engineer and the canal board and that the contract with the successful bidder must be in a form approved by the attorney-general and must be made with the person, firm or corporation who shall offer to do and perform the same *at the lowest price and who shall give adequate security for the faithful and complete* performance of the contract, etc.

Section 9 of the act provides for the payment from time to time as the work progresses for the work performed, retaining, however, in all cases not less than ten per centum of the estimate for the work done as further security for faithful performance of the contract.

In addition to the provisions of the statute to which attention has been specifically called there are many other provisions therein which were enacted for the purpose of giving the state officers full control over every detail of the work of canal improvement which was to be paid for out of the state treasury and to provide limitation and specific direction upon and with respect to the manner of the accomplishment of the work of canal construction and every detail thereof.

It is not pretended that any of the provisions of this statute has been complied with with respect to the disbursements by the railroad company of the moneys which it now seeks to recover from the state except perhaps that the plans for the new bridge structure received the approval of the state officers. If the award is sustained it contemplates payment out of a special fund created by a referendum act which provides many safeguards with respect to the disbursement of the fund, without the observance of any of the safety provisions of the act, but in defiance of them.

Not only is the state asked to pay for barge canal construction work done in a way forbidden by the statute, but the effect of this award is to make the state a participant in a joint enterprise with the railroad company not contemplated by the Barge Canal Act or any other statute to which my attention has been called.

It was contended on the part of the claimant that the notice to the claimant to elevate its bridge implied a willingness and an intention to pay the cost thereof and that therefore the work was done with that understanding. If I am right in the conclusions above reached it is immaterial whether or not there was such an understanding or in fact such an agreement because it would have been beyond the power of the state officers to make it for the reasons above assigned. In addition to that it should be noted that the notice to the railroad company to elevate its structure was given in October, 1910, at which time the state officers did not recognize the obligation of the state to raise such bridges at state expense but on the contrary were defending litigation brought for the purpose of establishing such liability, which litigation was not finally decided against the claim of the state by the Court of Appeals until February, 1912. *Lehigh Valley R. Co.* v. *Canal Board,* 204 N. Y. 471.

Claimant also contends and the majority of the court has held that the liability of the state in this case is established by the decision of the Court of Appeals in the *Lehigh Valley* case. I cannot concur in that view. The *Lehigh* case did not arise as did this case. In the *Lehigh* case notice was served upon the railroad company substantially as in this case requiring it to elevate its bridge. The railroad company refused to proceed with the work, whereupon it was notified by the state officers that unless it did proceed with the work the state would clear the river of the obstruction

caused by the bridge. In that situation the railroad company brought an action in the supreme court to restrain the state officers from carrying out their threat to remove or to interfere with the bridge. The court held that because of, and solely because of the provisions of the Barge Canal Act, the railroad company's bridge could not be removed or interfered with by the state except in the work of elevating it at state expense and the state officers, the canal board, etc., were restrained from removing and interfering with the bridge except for the purpose of reconstruction thereof by the state and at state expense, or unless the state should first appropriate the bridge and its approaches *in the manner prescribed by section 4 of the Barge Canal Act.*

In the case at bar the state officers directed the claimant to elevate its bridge and clear the river of obstructions as a duty claimed by the state to rest upon the railroad company not admitting the state's liability to pay any part of the expense, but as an alternative to the removal of the structure by the state. So far as the record shows this request was complied with without demurrer on the part of the claimant, certainly without instituting legal proceedings to prevent it, and was, therefore, the voluntary act of the claimant company for which it cannot recover of the state. The claimant company acceded to the request of the state officers and voluntarily did the very things which in the *Lehigh Valley* case it was held that the corporation could not be compelled to do and, it may be pertinent here again to remark, took advantage of the situation thus occurring to make a permanent improvement in its railroad property at the location of the bridge to the value of $250,000 or to the value of more than $160,000 over and above the value of any **work in which it claims the state has any interest**

whatever. The state had no interest in constructing a two-track bridge at this point. There was no way by which it could be compelled to unite with the railroad company in the construction of any such structure. Under the terms of the Barge Canal Act as construed by the Court of Appeals in the *Lehigh* case, when the state required a greater clearance than was afforded by the old bridge the most it could be compelled to do in furtherance of such requirement was to elevate the old bridge and if a new bridge was necessary to meet the requirements, then to build a new bridge of the same serviceable value as the old bridge.

Therefore, as before stated, it is clear that there is no obligation imposed upon the state in the premises except such as has been specifically imposed by the statute which under the Constitution was submitted to and approved by the people. It is reasonable to assume that the act received the approval of the people because of the very strict definition and limitation of the powers of the state officers with regard to the expenditure of the large amount of moneys, the proceeds of the bonds authorized by the act, and inasmuch as I find in that statute as I view it no provision for the expenditure of any part of those moneys in the manner and under the circumstances permitted by the award in this case and because I am persuaded that all attempts to evade the plain provisions of the act should be discouraged, I find myself unable to concur with my learned associates in the conclusion at which they have arrived.

Claim allowed.