(82 Misc. Rep. 72.)

WEST VIRGINIA PULP & PAPER CO. OF DELAWARE v. PECK et al.

(Supreme Court, Special Term, Saratoga County. August, 1913.)

1. NAVIGABLE WATERS (§ 22*)—RIGHTS OF LANDOWNER—MAINTENANCE OF DAM.

Where a company owning land on the Hudson river was granted the right by statute (Laws 1882, c. 406; Laws 1900, c. 683) to erect a dam of a certain height, it acquired no rights as against the state by increasing the height of a dam of the full authorized height by the use of flashboards.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 100–103, 105, 106, 108–120, 132, 260; Dec. Dig. § 22.*]

2. ESTOPPEL (§ 29*)—GRANTEE—TITLE OF GRANTOR.

Where a company owning property on the Hudson river claimed under a grant from the state under Laws 1900, c. 683, giving the right to erect a dam of a certain height, it was estopped from questioning the grantor's title.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 69–73; Dec. Dig. § 29.*]

3. NAVIGABLE WATERS (§ 22*) — GRANT — CONSTRUCTION — "ON THEIR OWN LANDS."

The expression "on their own lands," as used in Laws 1882, c. 406, authorizing a company to construct a dam across the Hudson river on their own lands, refers to the anchorage upon the shore, not to the bed of the stream, and fixes the location on the stream.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 100–103, 105, 106, 108–120, 132, 260; Dec. Dig. § 22.*]

4. NAVIGABLE WATERS (§ 8*)—PROPERTY GRANTS—RESTRICTIONS.

With every property grant from the state there is reserved the inalienable power to exercise its sovereign authority whenever occasion

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

therefor may arise, and hence Laws 1900, c. 683, granting to a company the right to erect a dam on the Hudson river, did not surrender the state's power to improve the river for navigation without rendering itself liable in damages.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 21; Dec. Dig. § 8.*]

5. NAVIGABLE WATERS (§ 36*)—NAVIGABILITY—BED OF STREAM—TITLE.
The Hudson river above tide water is a navigable stream, the title to the bed of which is in the state.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. § 36.*]

6. NAVIGABLE WATERS (§ 2*)—IMPROVEMENTS—POWER OF STATE.
While the state's power to improve navigable tidal and boundary streams is subordinate to that of the federal government, its power to improve other navigable waters of the state is equal to that of the federal government in tidal and boundary streams.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 2, 63; Dec. Dig. § 2.*]

7. INJUNCTION (§ 163*)—TEMPORARY INJUNCTION—GROUNDS.
Where, on a motion to continue a temporary injunction granted ex parte pending the action and restraining defendants from tearing down flashboards on a dam, it appears upon the law and the facts that there is no merit in plaintiff's case, the motion will be denied, though removal of the flashboards pending the final determination of the action will cause plaintiff large pecuniary loss.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 357–371; Dec. Dig. § 163.*]

Action by the West Virginia Pulp & Paper Company of Delaware against Duncan W. Peck and others. Motion to continue injunction denied.

Lewis E. Carr, of Albany, for plaintiff.

Joseph A. Kellogg and Edward J. Mone, Deputy Attys. Gen., for defendants.

VAN KIRK, J. This is a motion to continue an injunction, pending the action, granted ex parte with an order to show cause. The defendants took from the dam of the plaintiff flashboards two feet or more high. The injunction restrains defendants from taking down or interfering with the flashboards on the dam.

In 1882, by chapter 406 of the laws, it was provided that:

"The Hudson River Water Power & Paper Company are hereby authorized to construct a dam across the Hudson river at Mechanicville, on their own lands, in such manner as not to injuriously affect the water privilege at Stillwater village as it now exists, or any water privilege now existing and in use on said river between Stillwater village and lands of the Hudson River Water Power & Paper Company without an agreement with the owner or owners of such rights; and to connect the waters of said river with the Champlain canal, by the construction of locks, upon such plans as may be approved of by the state engineer and the superintendent of public works. Before constructing said lock or locks, a map of location shall be filed with the state engineer and surveyor, who, together with the superintendent of public works, shall determine and prescribe such regulations as they may deem to be for the interest of navigation and for the safety and protection of the interest of the state, and the said superintendent of public works shall at all times have control of the same."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This law is not in the form of an absolute grant of any property right but is a permission or authority to construct the dam. There is no limit placed upon the height of the dam by the act. Under this act a dam was constructed. In 1909, by chapter 683 of the Laws, it was provided:

"The erection of the dam heretofore built by the Hudson River Water Power & Paper Company, the name of which has been since changed to the Duncan Company, across the Hudson river at Mechanicville, * * * is hereby legalized and said company is hereby authorized to forever maintain said dam and flood back up said river so far as it now owns the adjacent uplands or may have rights of flowage thereon, for the purpose of maintaining the pond formed by such dam; and any interest of the state in the lands under the waters of said river, covered by said dam and the buildings and works of said company connected therewith, is hereby granted to said Duncan Company."

The act of 1882 not only does not purport to be a grant of property, but it was not passed by the necessary vote, by which the Legislature is authorized to convey state property. The act of 1900 is evidently intended to be a grant of state property. It was passed by both houses of the Legislature by a two-thirds vote, as required by the Constitution. Article 3, § 20. It applies to the dam as it then existed. In 1904 the plaintiff raised the crest of the dam three feet. No question, however, is raised by the state on this account, and therefore the dam at its present height may be considered, for the purposes of this motion, the dam authorized by the act of 1900. This act conveys the title of the state in the bed of the stream under the dam and works of the plaintiff. The following conclusions result:

[1] (1) The height of the dam authorized is the height of the present dam without flashboards. Nothing in the grant authorizes the plaintiff to increase the height of the dam and no rights have been acquired by the plaintiff as against the state by reason of the fact that it has been accustomed to use flashboards. Fulton Light, Heat & Power Co. v. State of New York, 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. (N. S.) 307.

[2] (2) Plaintiff, claiming under the grant from the state in 1900, is estopped from questioning the title of its grantor. 16 Cyc. 685, 686; Fitch v. Baldwin, 17 Johns. 161.

[3] (3) The expression in the act of 1882, "on their own lands," refers not to the bed of the stream but to the anchorage upon the shore and fixes the location on the stream.

[4] (4) The grant of 1900 did not, and was not intended to, convey or abdicate any part of the power of the state to improve public navigation in the river. People v. New York & S. I. F. Co., 68 N. Y. 71; Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592.

While it would seem that the plaintiff is estopped from disputing the title of the state to the bed of the Hudson, the plaintiff nevertheless does urge its title thereto.

[5] I have not found any case in which the bed of the Hudson river north of its junction with the Mohawk has been determined in an

action between parties who directly disputed the title of the state in the bed of the stream, but it has been held uniformly that the Hudson river above tide water is a public, navigable stream, the bed of which belongs to the state and not to the riparian owners. These declarations by the court have been frequent. Palmer v. Mulligan, 3 Caines, 307, 2 Am. Dec. 270; Canal Appraisers v. People, 17 Wend. 571; People v. Tibbetts, 19 N. Y. 523; People v. Canal Appraisers, 33 N. Y. 461, 465, 475; Smith v. City of Rochester, 92 N. Y. 463, 44 Am. Rep. 393; Fulton Light, Heat & Power Co. v. State, 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. (N. S.) 307; People v. Page, 39 App. Div. 110, 56 N. Y. Supp. 834, 58 N. Y. Supp. 239; Slingerland v. International Contracting Co., 43 App. Div. 215, 60 N. Y. Supp. 12. Rights in the Hudson where the tide runs are considered in Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592, and Matter of Mayor, 182 N. Y. 361, 75 N. E. 156, 108 Am. St. Rep. 809. The canal acts uphold the same view. It is conceded that no bridge has been constructed across the Hudson river and no dam in the Hudson river without a grant from the state; and, since the existence of the canal, the waters of the Hudson river have been uniformly diverted from the natural stream and used, without question and without compensation to any riparian owner, for public navigation in the canal. Thus for more than 80 years property rights have been taken, held, and conveyed on the understanding that the bed of the Hudson river to high-water mark belongs to the state and not to the riparian owners.

It is urged that the declarations in these cases were not necessary to the decision of the cases, but it must be recognized that they have been accepted as the law of the state and have been positively declared to be the law. Smith v. City of Rochester, 92 N. Y. 483, 44 Am. Rep. 393. The trial court does not feel at liberty to disregard it, even if it be held that the plaintiff is not estopped from disputing its grantor's title. It must be held, therefore, that the Hudson is a public, navigable stream, the title to the bed of which is in the state of New York. At the premises in question, the canal and the lock through the dam are in the stream, and the construction of the Barge canal is an improvement of the public stream for navigation. Lehigh Valley R. R. Co. v. Canal Board, 146 App. Div. 160, 130 N. Y. Supp. 978.

The state may convey its property by act of the Legislature, but its sovereign rights it cannot alienate. Smith v. City of Rochester, 92 N. Y. 484, 44 Am. Rep. 393. With every property grant by the state there is reserved the inalienable power to exercise its sovereign authority, whenever the occasion therefor may arise. Lehigh Valley R. R. Co. v. Canal Board, 146 App. Div. 159, 130 N. Y. Supp. 978, and cases cited, approved 204 N. Y. 473, 474, 97 N. E. 964, Ann. Cas. 1913C, 1228. In the said acts of 1882 and 1900 the state did not alienate any part of its power to improve the Hudson river for navigation. This power is absolute as against private rights and property, even though the title to the bed thereof is in the individual possessing said private rights and property; and such private rights and

property may be destroyed or lessened in value by such improvement without compensation; this not being a "taking" of private property for public use. United States v. Chandler-D. W. P. Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063; Lehigh Valley R. R. Co. v. Canal Board, supra.

[6] While the sovereign power of the state to improve for navigation public tidal and boundary streams is subordinate to the power of the federal government, as to all other public waters within its limits, the state has the same power to benefit and promote navigation held by the federal government in tidal and boundary streams. When the state has determined to improve public waters for navigation and adopted its plan, its decision is final and not subject to review by the courts. United States v. Chandler, etc., supra.

The conclusion, therefore, seems to be necessary that in this case the state government has full power and authority to use the bed of the Hudson river and all constructions therein for purposes of public navigation, without being liable to a claim for damages from any private interest; and therefore, in making such use, in accordance with its declared intention and plan, the state government and its officers cannot be interfered with by parties owning property whose value is lessened by such use or preparation therefor. The plaintiff not being entitled to compensation, it is not necessary that the property be formally appropriated by the state before removing the flashboards; and, since the plaintiff had not the right to maintain these flashboards, it would seem that the superintendent of public works should not be restrained from removing them. N. Y. Const. art. 5, § 3.

[7] It is strongly urged by the plaintiff that the court should continue this injunction pending the action. The state has granted to the plaintiff the right to construct this dam, and the right to maintain it at its present height is not disputed. Also the plaintiff, without objection by the state, has used flashboards upon its dam constantly (except from 1904 to 1911, inclusive) in low-water periods. While flashboards are on the dam during a period of low water, little, if any, water flows over the flashboards, the capacity of the plaintiff's wheels taking the entire flow of the river; and, with the flashboards upon the dam $2\frac{1}{2}$ feet high, the surface of the water is not raised higher than it stands during the periods of ordinary water in the stream and when no flashboards are used. The defendant must construct the works for its canal to meet a condition of ordinary high water in the stream, and the use of these flashboards does not therefore submerge the works more than the state must have contemplated. Because of this grant and use, the plaintiff in good faith has constructed expensive works and enlarged its capacity to fit the use granted and permitted by the state. If the state is allowed to remove the flashboards during the present period of low water, the plaintiff must suffer a large pecuniary loss. It is also urged upon the affidavits that the contractors took the contracts understanding fully the conditions, as recited in the contract, after viewing the conditions upon the premises. Therefore, if any expense is occasioned by the use of the flashboards to the contractors, it must be an expense borne by the

contractors and one which they had taken into account in making their contracts. Therefore the court is urged to exercise the discretion given to it upon the application for a temporary injunction and leave the parties in their present position till a trial has finally determined their respective rights. The plea is strong; but, however much the court may feel inclined to answer it favorably, I know of no ground on which in its discretion it may grant an injunction, when, upon the law and the facts, it is satisfied that the plaintiff is not entitled to an injunction.

The motion to continue the injunction is denied.

Motion denied.