Charles H. Stegmeier, Claimant, *v.* The State of New York.

Claim No. 16805.

(Court of Claims, January, 1922.)

Claims against state — right of state to improve navigability of its waters paramount — state not liable to riparian owners in absence of negligence — Ellicott creek — claim by owner of bed of stream for consequential damages to dock and warehouse dismissed — Laws of 1809, chap. 45; Laws of 1813, chap. 47; Laws of 1913, chap. 624.

The rights of riparian owners are subject to the paramount right of the state to improve the navigability of its waters, and in the absence of negligence, the state is not liable for consequential damages caused by the lawful exercise of such paramount right.

During the years 1919 and 1920 claimant was the owner of lands running " to the Ellicott Creek, thence westerly along said Creek " and including all the rights of his grantors in and to " the Ellicott Creek adjoining said premises and to the center thereof." On the water-front of this land had been erected a dock and warehouse, which was partially supported by piling driven into the bed of the river. By statute (Laws of 1809, chap. 45; Laws of 1813, chap. 47) the state indicated its control of the waters of Ellicott creek specifically reserving the navigable rights of the public therein and claimant took title with notice thereof. In April, 1919, in pursuance of and in conformity with chapter 624 of the Laws of 1913 work was being performed by a duly authorized contractor, under the supervision of state officers, immediately in front of claimant's premises. The entire work was completed August 14, 1919, and as a result thereof, on April 16, 1920, a portion of the bed of the creek in front of claimant's premises gave way taking with it a portion of his warehouse. Upon the hearing of a claim for damages there was no proof to sustain the contention that claimant's damages were caused by the negligence of the state. *Held,* that as there had been no invasion of claimant's property upon which direct damages could be

predicated, even though claimant was the owner of the bed of the stream at the point in question, the damage suffered by claimant was merely a consequential injury to his right of wharfage, which by implication of law as well as the reservation specifically expressed in the statutes of 1809 and 1813, he held subject to the paramount rights of the public, and the claim for consequential damages will be dismissed.

CLAIM for damage to warehouse.

Norman D. Fish, for claimant.

Charles D. Newton, Attorney-General (John H. Clogston, Deputy Attorney-General, of counsel, and Patrick H. Clune, Deputy Attorney-General, with him on the brief), for the State of New York.

CORWIN, J.   The claimant, during the years 1919 and 1920, was the owner of lands fronting on Ellicott creek in the city of Tonawanda, N. Y., such lands running " to the Ellicott Creek, thence westerly along said Creek " and including all the rights of his grantors in and to " the Ellicott Creek adjoining said premises and to the center thereof." On the water-front of this land had been erected a dock and warehouse, which was partially supported by piling driven into the bed of the river.

Chapter 45 of the Laws of 1809 declared certain designated waters of Ellicott creek, including those in front of the premises of the claimant, to be " a public highway, provided, however, that the owner or owners of the adjoining lands may erect mills or other waterworks, storehouses or docks on the said waters, so that the same shall not obstruct the navigation thereof."

Chapter 47 of the Laws of 1813 declared certain designated waters, including those waters of Ellicott creek in front of the premises of the claimant, to be " public highways, except so much of the said waters as may be necessary for the owners of the adjoining

land to build store-houses and docks, for the accom-
modation of boats; provided, the same shall not
obstruct the navigation of the said waters; and fur-
ther, the said owners may erect mills or other works
on the waters of * * * '' (naming a number of creeks,
including Ellicott creek) '' so as not to obstruct the
navigation thereof.''

Chapter 624 of the Laws of 1913 authorized the
superintendent of public works '' to improve that por-
tion of the Ellicott creek between the Erie canal and
the city line of the city of Tonawanda by deepening the
channel of said creek to such a depth that the bottom
of said channel will be on a level with the bottom of
the channel of the Erie canal.'' Said statute further
provided that '' The work herein provided for shall be
done by and under the direction of the superintendent
of public works in accordance with plans and speci-
fications to be furnished by the state engineer and
surveyor;'' and that such work was to be done either
by contract entered into by said superintendent or
by the forces of the department of public works or
partly by both methods in the discretion of the
superintendent.

In April, 1919, such work was being performed by a
duly authorized contractor, in pursuance of and in con-
formity with the above-mentioned statute, in that por-
tion of Ellicott creek immediately in front of the claim-
ant's premises, the entire work being completed
August 14, 1919. As a result thereof, on April 16,
1920, a portion of the bed of the creek in front of
claimant's premises gave way, or as the claimant
expressed it, '' slid in,'' taking with it a portion of his
warehouse.

For this damage the claimant seeks to be compen-
sated.

We believe it to be the settled rule laid down by both

the federal courts and the courts of this state that the right of the state to improve the navigability of its waters is paramount, to which the rights of riparian owners are necessarily subject; and that the state is not liable for consequential damages to riparian owners caused by the lawful exercise of that right, in the absence of negligence. *Scranton* v. *Wheeler,* 179 U. S. 141; *Slingerland* v. *International Contracting Co.,* 169 N. Y. 60; *Sage* v. *Mayor,* 154 id. 61; *Lewis Blue Point Oyster Co.* v. *Briggs,* 198 id. 287.

In the case of *Sage* v. *Mayor, supra,* Judge Vann, in delivering the opinion of the court, said: " While we think it is a logical deduction from the decisions in this state that, as against the general public, through their official representatives, riparian owners have no right to prevent important public improvements upon tidewater for the benefit of commerce, the principle upon which the rule rests, although sometimes foreshadowed, has not been clearly set forth. Although, as against individuals or the unorganized public, riparian owners have special rights to the tideway that are recognized and protected by law, as against the general public, as organized and represented by government, they have no rights that do not yield to commercial necessities, except the right of preemption, when conferred by statute, and the right to wharfage, when protected by a grant and covenant on the part of the state, as in the *Langdon* and *Williams* cases. I think that the rule rests upon the principle of implied reservation, and that in every grant of lands bounded by navigable waters where the tide ebbs and flows, made by the crown or the state as trustee for the public, there is reserved by implication the right to so improve the waterfront as to aid navigation for the benefit of the general public, without compensation to the riparian owner."

Court of Claims, January, 1922.     [Vol. 117.

But it is not necessary to rely upon an implied reservation in the present case. By the early acts of 1809 and 1813, relied upon by the claimant, the state indicated its control of the waters in question, specifically reserving the navigable rights of the public therein, and the claimant took with notice thereof. *People* v. *Canal Appraisers,* 33 N. Y. 461, 467.

It is true that the above discussion by Judge Vann refers to tidal waters; but there is, in this state and in this country, no such distinction between tidal and non-tidal waters as existed at common law. Ellicott creek, while a non-tidal inland stream, is, at the point in question, one of those streams which " are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water;" and is, therefore, a navigable stream. *The Daniel Ball,* 10 Wall. 557; *The Montello,* 20 id. 430; *Morgan* v. *King,* 35 N. Y. 454. Nor does it matter whether the ownership of the bed of the stream is in the claimant or in the state; because, if in the claimant, his title is necessarily subject to the public servitude of navigation. Nichols Em. Dom. § 139; Farnham Waters & Water Rights, § 29; *Scranton* v. *Wheeler, supra,* 163; *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53; *Buffalo Pipe Line Co.* v. *N. Y., L. E. & Western R. R. Co.,* 10 Abb. N. C. 107; *Lehigh Valley R. R. Co.* v. *Canal Board,* 146 App. Div. 151, 159; *West Virginia Pulp & Paper Co.* v. *Peck,* 82 Misc. Rep. 76.

Judge Vann notes an exception as to the right to wharfage, when protected by a grant and covenant on the part of the state, in conformity with the rule laid down in *Langdon* v. *Mayor of City of N. Y.,* 93 N. Y. 129, and *Williams* v. *Mayor of N. Y.,* 105 id. 419; but the claimant cannot claim the benefit of this excep-

tion because he does not bring himself within the rule established by those cases. The grants contended by the claimant to have been acquired by virtue of the acts of 1809 and 1813 were not based upon any consideration, and were, in fact, merely confirmatory of the rights already possessed by claimant's predecessor in title as riparian owner. *Rumsey* v. *New York & New England R. R. Co.,* 133 N. Y. 79. This clearly distinguishes the claimant's case from the *Langdon* and *Williams* cases, as the grants in these latter cases were, in each instance, based upon a valuable consideration, and this fact was a controlling element in those decisions as appears from the discussion by Judge Earl in the former case (pp. 145–149) and the discussion by Judge Finch in the latter case (p. 436).

It is asserted that the claimant has been deprived of his property without just compensation. There has been, in this case, however, no taking of private property for public use within the meaning of the constitution; but merely a consequential injury to claimant's right of wharfage, which right, by reason of the reservation implied by law as well as the reservation specifically expressed in the acts of 1809 and 1813, he held subject to the paramount rights of the public. Nor has there been an invasion of claimant's property upon which direct damages can be predicated, even though he owns the bed of the stream; because his title thereto, if any, as has been shown, is also subject to the easement of the public therein for the purpose of navigation. The damages suffered by claimant were clearly consequential. *Radcliff* v. *Mayor of Brookyn,* 4 N. Y. 195; *Uppington* v. *City of New York,* 165 id. 222.

There is no proof in the case to sustain the claimant's contention that his damages were caused by the negligence of the state. The work was conducted in

strict accordance with the provisions of chapter 624 of the Laws of 1913 and under the supervision of the state officers named therein. The competency of these has not been questioned. It is true that claimant's engineer testified that the dredging should have been done at a different grade than that actually used; but that was a matter of discretion resting with the state offices charged with the direction of the work, who were responsible for properly carrying out the improvements to navigation contemplated by the act.

It is claimed on behalf of the state that the land upon which the structures in question were erected was appropriated by the state of New York at the time of the building of the Erie canal and that the claimant was, therefore, a trespasser. In the view we have taken of the case, it is unnecessary to pass upon this question. The claim must be dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.